McDonald v. Chicago and Northwestern R. R. Co.

McDonald *et ux.* v. The Chicago & N. W. R. R. Co.

1. **Amendment:** INCREASE OF DAMAGES. The allowance of an amendment to a petition, increasing the amount of damages claimed, was held not erroneous.

2. **Railroad:** DUTY TO PROVIDE STATION ACCOMMODATIONS. There exists a common law duty on the part of railway companies to provide reasonable accommodations at their stations, for passengers who are invited and expected to travel on their roads.

3. —— If the station room is full, or if it is intolerably offensive by reason of tobacco smoke, so that a passenger has good reason for not remaining there, it will justify his endeavor to enter the cars at as early a period as possible, and if in so doing he receives an injury from the unsafe and dangerous condition of the platform or steps, in a place where passengers would naturally go, the company are liable therefor, if the passenger used proper care, and violated no rule or regulation of the company of which he had actual knowledge, or which, as a reasonable man, he would be bound to presume existed.

4. **Evidence:** CARLISLE TABLES: HUSBAND AND WIFE. In an action for damages, by a husband and wife against a railroad company, for permanent injuries received by the wife, the Carlisle tables may be admitted to show the expectancy of the wife's life, when it appears from the evidence that, by reason of such injuries, a servant had been, and probably would have to be, employed to do the work the wife had been accustomed to do.

5. **Parties:** HUSBAND AND WIFE. Section 2771, of the Revision, changes the common law rule, that, in an action wherein the husband and wife were joined, for an injury to the wife, the recovery was limited to damages for that injury alone, and did not embrace the injury to

McDonald v. Chicago and Northwestern R. R. Co.

the husband; and under said section the husband, in such an action, may join thereto a claim in his own right, and recover for the loss of services of the wife, occasioned by the injury.

6. —— ATTORNEY WHO RECEIVES PER CENT OF RECOVERY. An attorney, who, by an agreement with his client, is to receive a portion of whatever amount shall be recovered, is not a necessary party plaintiff, and need not be joined as such.

7. Railroad: RULES OF COMPANY AS TO ENTERING CARS. Railroad companies are held to a strict accountability for the safety of passengers. To enable them to properly discharge this duty, they have power to make reasonable rules and regulations respecting the time, mode, and place of entering cars; and these, *when known to the passenger*, he is bound to conform to, and he cannot violate them by pursuing another course and hold the company liable for damages thus occasioned, though the jury may believe that an ordinarily prudent man might have adopted the same course.

8. —— INJURY FROM DEFECTIVE PLATFORM: LIABILITY OF COMPANY AS COMMON CARRIERS. In the present case, which was an action by a husband and wife against a railroad company, as common carriers, to recover damages for injuries to the wife, caused by defective steps to a platform to which the train had backed, and which was not the usual place for passengers to get on and off the cars, the jury should have been instructed to ascertain from the evidence whether the company had designated or set apart the platform in front of the depot as the place where it required all passengers to enter the cars: if so, and this was known to the plaintiffs, and they, in disregard of such requirement, in advance of time, and without any justification, sought to enter the cars at another place, and in so doing, met with the injury, then the company would not be liable as common carriers.

9. —— But if, on the other hand, there was no such rule or regulation known to the plaintiffs, and they in good faith, and using reasonable care, were seeking to find and enter the cars, the company would be liable, as the plaintiffs would have a right to presume, that the platform and its approaches were in a safe condition. The authorities sustaining the foregoing principles collated by DILLON, Ch. J.

10. —— GENERAL RULE. As a general rule, railroad companies are bound to keep in a safe condition all portions of their platforms and approaches thereto, to which the public do or would naturally resort, and all portions of their station grounds reasonably near to the platforms, where passengers or those who have purchased tickets with a view to take passage on their cars, would naturally or ordinarily be likely to go.

*Appeal from Linn District Court.*

THURSDAY, DECEMBER 10.

LIABILITY OF RAILWAY COMPANY FOR SAFE CONDITION
OF PLATFORM AT STATIONS, ETC. — This action is brought
to recover damages for an injury received by Mrs. Mc-
Donald, at Cedar Rapids, on the evening of January 3,
1867.

The petition avers that the defendants are common
carriers of passengers; that, on the 3d day of January,
1867, at defendant's station, in Cedar Rapids, Mrs. Mc-
D. (plaintiff) purchased a ticket entitling her to be
carried from Cedar Rapids, Iowa, to Fulton, Ill., and,
that, "thereupon it became and was the duty of the
defendant to use due and proper care that the plaintiff
should be safely placed in said train, and so to construct
and keep in good repair the platform around the said
depot and the steps to the same, that plaintiff could
safely go from the platform to the cars;" yet the defend-
ant neglected its duty in this behalf, "so that the plaintiff,
in going from the platform to the cars, fell through a
step connected therewith, which defendant had negli-
gently left in an unsafe condition, by reason of which
fall she broke her ankle bone and was otherwise injured,"
etc. Answer:

1. In denial.

2. That the injury was caused by the plaintiff's own
negligence.

3. That, before suit brought, "plaintiffs sold and con-
veyed to one E. Latham one-half of the claim in suit,
who still owns the said half of said claim, so that the
plaintiffs were not then, and are not now, the sole real
parties in interest in the action."

On the trial it appeared in evidence that the plaintiffs

(husband and wife) had been on a visit at Cedar Rapids, and being desirous of going to their home in Wisconsin, procured tickets of the defendant, at its station in Cedar Rapids, and waited in the passenger room at the station until the arrival of the train on which they expected to take passage. The train arrived at 6.20 P. M., and left at 6.45 P. M. When the train arrived, the plaintiffs went to take their seats in the cars, and when about to step upon the train heard the announcement of "twenty minutes for supper." Mr. McDonald testified, that, about the time this announcement was made, "the train started and moved back beyond the platform, and I told my wife we had better go back into the room till such a time as the train should come forward. She said "no," she would rather sit down on the platform, or stand up there, as the room was so full of tobacco smoke that she could not stand it. It made her sick. I proposed to her that we should go back to the cars and get on, as it was cold. We started and walked on the platform toward the cars until we came to the west end of the platform, and in going down the steps, one of them being loose and out of place at one end, it gave way and came up between my legs, and threw us both on the track head foremost, down under the train." Her right leg was broken, the left ankle sprained, and she was otherwise injured and long confined to her bed.

Mrs. McDonald testified to the same facts.

The evidence showed that the accident happened when it was "dusk, or getting dark." There was evidence tending to show care in descending the steps where the accident happened.

Mrs. McDonald was 59 years old and weighed about 200 pounds. There was evidence showing that the passenger depot, if not full, was crowded with foreign emigrants who were smoking. The plaintiff, Mr. Mc-

Donald, testified, "that it was thick with tobacco smoke, so much so that it was difficult for one to breathe, and my wife took more offense at it than I did." Mrs. McDonald testified, "that it was so smoky that it made me sick," and that this was the reason why she did not go back into the room, but went west along the platform to get aboard of the cars.

The plaintiff's son testified, "that the depot was so full of people that his mother could not get a seat, and that it was full of tobacco smoke, which was very offensive to her."

This testimony as to the smoky condition of the room was allowed to go to the jury against the defendant's objection.

The defendant produced evidence showing that the steps where plaintiffs fell were about 300 feet distant from the door of the passenger depot; and that the usual place for passengers to get on and off the cars was in front of the passenger depot and the platform between it and the freight depot. The depot buildings, platform, steps, etc., are correctly indicated in the annexed diagram.

McDonald v. Chicago and Northwestern R. R. Co.

Passengers to and from the Dubuque and S. W. R. R. depot usually pass over these steps.

It was also shown by the defendant that it was customary when the train arrived, as in this instance, from the west, to run back so as to bring the baggage and express cars to a point opposite the freight depot, for the purpose of discharging and receiving baggage and express matter. This movement, on the evening on which the accident in question happened, placed the passenger coaches west of the west end of the platform, so that the nearest passenger car was about one car length beyond the steps at the west end of the platform.

It was while the cars were thus standing, that the plaintiffs, without waiting for them to be drawn up to the platform in front of the passenger depot, started for them, walking the whole length of the platform, and in descending the steps the injury for which this action is brought happened.

Defendant also produced evidence to the effect, " that there was plenty of room to get on and off the trains from the platform; and that there was no necessity for any one to go down these steps to get on. Before leaving, trains always draw up in front of the passenger depot, and stop to take on passengers. The accident happened fifteen or twenty minutes before the leaving time of the train. The steps are not intended or used for passengers to get on the trains.

The defendant asked the court to give the following instructions, viz. :

" 1. If the jury believe from the evidence, that the defendant, at the time of the alleged injury at the station at Cedar Rapids, was provided with a safe and suitable platform in front of, and. adjacent to, the passenger rooms of said station, so that passengers could safely and conveniently pass from said room to the trains,

and that passenger trains stopped at said platform for the purpose of receiving passengers, and if said plaintiffs, in attempting to get upon said train by a different and unusual way and at a different and unusual place, met with said accident, then the plaintiffs are not entitled to recover in this action.

"2. That if the plaintiff Margaret McDonald attempted to enter said train at a place not prepared or designed by the defendant for receiving passengers on trains, there being no paramount necessity for so doing, and in making such attempt she received the said injury then her own fault contributed to the same, and the plaintiffs cannot recover.

"3. The liability of the defendant as a common carrier did not commence as to the plaintiffs until the train which they were to take was drawn up to the usual place for receiving passengers, unless they were directed by some authorized agent of defendant to go upon the train at another and different place or before the train reached the usual place.

"4. If the jury believe from the evidence, that, before the commencement of this action, the plaintiffs agreed with Mr. E. Latham, that, as the consideration for his services in this action, he was to have one-half of all the money collected in said action, then the plaintiffs cannot recover in this action."

Each of these was *refused*, and the defendant excepted.

The court, after referring to the issues made by the pleadings, charged the jury as follows:

"3. If you find from the evidence that E. Latham, the plaintiffs' attorney, agreed to prosecute plaintiffs' claim for one-half he may recover, that does not make such an assignment as to make it necessary that he should be a party plaintiff.

"4. The principal question for you to determine is, by

whose fault or negligence did the accident occur? If one of the steps was loose and not nailed down, by reason of which the accident happened, it is such a want of care as would render the defendant liable, unless you find that the accident happened, or was contributed to, by the want of ordinary care and prudence on the part of the plaintiff Margaret McDonald.

"5. It is for you to determine from the evidence whether the plaintiff Margaret McDonald used ordinary care and prudence in leaving the depot and going to the cars by the way and at the time she did, and by ordinary care is meant such care and prudence as an ordinarily prudent person would exercise under like circumstances.

" 6. If you find that an ordinarily prudent person would not have gone down the steps of the platform where the accident occurred, but would have waited until the passenger cars were opposite the passenger depot, then the defendant is not liable. And if you find that the plaintiffs went by a way which was not used or traveled over by passengers to enter the cars, and that a person of ordinary prudence would not have gone by that way, you may fairly infer that there was a want of ordinary care on her part. Passengers must exercise ordinary care in approaching and entering the cars.

" 7. If, however, you find that the defendant backed its train up to the place where it stood when the accident happened; that persons could conveniently and safely approach the train where it then stood but for the defective step, and there was no rule or regulation of the company prohibiting persons from approaching the cars by that way, and that an ordinarily prudent person would have approached the train by that way, the defendant is liable if the accident occurred by reason of the defective step."

The defendant excepted to this charge.

The jury returned for the plaintiffs a verdict for $2,000. A motion for a new trial was overruled, and judgment was entered against the defendant, from which it prosecutes the present appeal.

The cause was submitted in this court on oral and printed arguments.

*E. S. Bailey* for the appellant.

I. The court erred in allowing the plaintiffs to amend the petition so as to claim $3,000 instead of $499 damages. The affidavit (page 6) discloses the reason why the damages were originally laid at $499, and afterward increased. It was a gross abuse of the privilege of amendment on the part of the plaintiff, and an abuse of sound discretion on the part of the court in permitting it to be done.

II. The court erred in admitting the answer of George McDonald to the fifth direct interrogatory as to the condition of the passenger room with respect to tobacco smoke, and also the testimony of Margaret McDonald and Alexander McDonald upon the same subject.

The evidence was no material or proper part of the case, and the fact of smoke being in the room, or that smoke was offensive to the plaintiff, or that the weather was cold, constituted no justification for the plaintiffs to attempt to enter the train before its arrival at the proper place, and no valid or legal excuse or justifying necessity for their fault in going to the train by a route not prepared or intended for that purpose. Its only object and effect was to prejudice the minds of the jury against the defendants.

III. The admission of testimony as to the expectancy of the plaintiff's life was error. This court, in *Donaldson* v. *M. & M. R. R. Co.* (18 Iowa, 289-90), held, that the admission of the Carlisle tables for the purpose of

proving the expectancy of life of the plaintiff's intestate was proper. But that action was brought to obtain compensation for a wrongful act producing death, and the value of the life in question was the rule or measure of damages. It is plain to be seen that such testimony is proper, as showing the probable length of life, and thereby establishing one very important element of its value in estimating the damage sustained by the estate of the deceased or his next of kin. But it seems impossible that it could give a jury any correct notion of the bodily pain, suffering, medical expense and loss sustained by a person who has sprained an ankle or broken a leg.

IV. The court erred in not granting the motion for nonsuit on the sixth point contained therein, in giving the third instruction and in refusing to charge the jury as requested by the defendant's counsel in the fourth paragraph of instructions requested. They all relate to the agreement established by testimony of the plaintiff, George McDonald, and made between him and his attorney, E. Latham. The testimony is as follows: "I agreed with Mr. Latham to collect the claim for fifty per cent; no collection, no pay; he was to have one-half of all he should collect; this agreement was made before the suit was commenced."

Upon these facts the suit should have been dismissed, for two reasons.

1. The agreement is champertous and contrary to public policy. 2 Parsons on Cont. 766; *Boardman & Brown* v. *Thompson*, 25 Iowa, 487.

And it appearing from the evidence that the suit is prosecuted under and in pursuance of a champertous agreement, the court ought not further to have entertained it. *Barker et al.* v. *Barker et al.*, 14 Wis. 131, 143; *Webb* v. *Armstrong*, 5 Humph. 379; *Morrison* v. *Deadrick*, 10 id. 342; *Hunt* v. *Lyle*, 8 Yerger, 142.

2. Latham being the assignee and equal and joint owner of the claim, was a real party in interest, and should have been made a party plaintiff. Revision, § 2757; *Lewando* v. *Dunham*, 1 Hilt. 114.

In this case it was held, that, where an action was brought by an assignee of the original claimant, and the evidence showed that another person was to share in the proceeds of the judgment, the action should have been dismissed, although the assignment to the plaintiff was in writing and under seal. The plaintiff did not have the whole interest.

V. The fifth and sixth instructions are erroneous in submitting to the jury the questions as to whether the plaintiff, as a passenger, had the right to leave the depot and go to the cars by the way and at the time she did; whether she had the option to go down the steps of the platform to reach the train, or wait until the cars were opposite the passenger depot, and also whether she had the right to go by a way which was not used or traveled over by passengers to enter the trains. The court instructed the jury that she had the right to do as she did; had the right to go to the cars by the way and at the time she did; had the right to go by a way not used or traveled over by passengers, provided that an ordinarily prudent person would have done so, or that she used ordinary care and prudence.

The defendant insists, that its liability does not at all depend upon the question as to what an ordinarily prudent person would do, or whether the plaintiff used ordinary care in doing as she did. If she had not the right to go when and where she did, then no degree of care and prudence on her part would render the company liable. This does not imply that she must be a trespasser or an unlawful intruder upon that part of the premises, but that in going there she disregarded the implied con-

tract existing between herself and the company, viz.: to conform to all reasonable rules and regulations of the company for entering its cars.

VI. The seventh instruction lays down substantially the same rule as the fifth and sixth, with one exception. It declares, that the defendants are liable for the injury if an ordinarily prudent person would have approached the train by that way and if there was no rule or regulation of the company prohibiting persons from approaching the cars by that way. If it is meant by the latter qualification that the prohibitory rule or regulation should have been a written or printed one, posted up so as to be brought to the notice and attention of passengers, in language prohibiting passengers to approach trains by that way, then we insist that it is not the law. It is not true that passengers have a right to go to any and all places about the carrier's premises, depots and vehicles, and at all times, unless prohibited by express rules and regulations, and thus increase the carrier's liability. It is their duty to use and occupy such places as are appropriated and designed by the carrier for them, and none other, he having provided safe and suitable ones of which the plaintiff had knowledge. The jury unquestionably understood that an ordinarily prudent passenger might go wherever he saw fit, if he was not forbidden to do so by an express and positive regulation.

VII. The court erred in refusing to give the first, second, and third instructions requested by the defendant's counsel.

We insist that these instructions were applicable to the evidence in the case, embody the principles of law appertaining to it, and should have been given.

They concede what the law implies as the obligation of the company in its contract for carrying passengers, viz.: that it is the duty of the company to provide safe

and suitable means of ingress to its trains, so that passengers can safely and conveniently pass from the station to the train, and to stop its cars at the platform for the purpose of receiving passengers. Having performed these specific duties and obligations, the company is discharged from further liability as to the passenger who desires to enter the train. It has done all that the law requires, and is not liable for injuries to a passenger sustained in consequence of his attempting to get upon the train at a different and unusual place, instead of by the platform.

There is also on the part of the passenger an implied contract that he will and does assent to all the company's reasonable rules and regulations for entering, occupying and leaving the cars, and if an injury befall him by reason of his disregard of regulations which are necessary and proper to the conducting of its business, the company is not liable in damages, even though the negligence of the servants of the company concurred in causing the mischief.

The regulation of the company for entering the cars by the platform was apparent from its existence and from having been placed there and used for that purpose, and if a passenger voluntarily disregards this regulation and attempts to enter the train by a different and unusual way, and thereby sustains an injury, he and not the company is responsible for it. *Sullivan* v. *Phil. & Read. R. R. Co.*, 6 Casey, 234; *Penn. R. R. Co.* v. *Zebe*, 33 Penn. St. 318; S. C., 37 id. 420; Angell on Com. Carriers, §§ 525, 527, 530.

VIII. The verdict is contrary to the evidence and the law.

This action being founded on a breach of contract or duty on the part of the defendant as a common carrier, to provide safe means of access to its cars, so that the plaintiffs could safely enter them, and there being no

proof of neglect in that respect, but on the contrary it being indisputably established that the defendant had provided safe and convenient means of access, the jury should have rendered a verdict against the plaintiffs. Angell on Carriers, § 525, 527, 530; *Sullivan* v. *Phil. & R. R. Co.*, 6 Casey, 234; *Penn. R. R. Co.* v. *Zebe,* 33 Penn. St. 318; S. C., 37 Penn. St. 420; *Frost* v. *G. T. R. Co.,* 10 Allen, 387; *Todd* v. *Old Colony R. R.,* 7 Allen, 207; *Indiana Central R. R. Co.* v. *Hudelson,* 13 Indiana, 325; *Carolus* v. *Mayor, etc.,* 6 Bosw. 15; *Porter* v. *C. & N. W. R. R. Co.,* 20 Iowa, 73; *Railroad Co.* v. *Montgomery,* 7 Ind. 474, 479.

*E. Latham* for the appellees.
(No brief found on the reporter's file.)

DILLON, Ch. J. — Appellant's various grounds for a reversal of the judgment, we notice in the order in which they are presented by counsel.

1. AMEND-
MENT:
increase of
damages.

1. There was no error in allowing the plaintiffs to amend the petition so as to increase the amount claimed as damages.

2. There was no error in the action of the court in allowing witnesses to testify as to the condition of the

2. RAILROAD:
duty to pro-
vide station
accommoda-
tions.

passenger room with respect to tobacco smoke. The evidence was proper as part of the transaction out of which the injury arose, and as showing why the plaintiffs did not remain in the passenger room, or return to it. The effect of this circumstance upon the rights of the parties was not stated to the jury. It would not justify the plaintiffs in violating a known rule of the company if there was one, as to the particular place where passengers were required to enter their cars. But I have no hesitation in saying, that, without any statute enacting it, there is a common law duty on these

companies to provide reasonable accommodations at stations for the passengers who are invited and expected to travel on their roads. See *Caterham R. R. Co.* v. *London R. R. Co.*, 87 Eng. C. L. 410. If the station room is full, or if it is intolerably offensive, by reason of tobacco smoke, so that a passenger has good reason for not remaining there, while this will not justify him in violating reasonable rules and regulations of the company, which are known to him, respecting the place, mode and time of entering the cars, it will justify his endeavor to enter the cars at as early a period as possible, especially if it is dark and cold without, if in so doing he uses proper care and violates no rule or regulation of the company of which he has actual knowledge, or which, as a reasonable man, he would be bound to presume existed. He would not, of course, be justified, by the condition of the passenger room, in rashly endeavoring to board a train in motion, or the like; but if the train had arrived, was on the track, the car doors open, and if, as is frequently if not generally the case, passengers are allowed, or at least not forbidden, to enter the cars before they are drawn up in front of the station, we think a passenger may reasonably and properly make the attempt to reach and enter the cars, if he is not aware of any rule or regulation to the contrary; and if he receives an injury in so doing (he using proper care) from the unsafe and dangerous condition of the platform or the steps in a place where passengers would naturally go, the company are liable therefor.

This subject, and some of the leading and recent decisions bearing upon it, will be alluded to in considering the instructions of the court to the jury.

3. There was evidence tending to show, that the injuries to the wife were permanent in their nature, and

4. EVIDENCE: Carlisle table.

likely to disable her during her life from rendering effectual service to her husband and

family in the discharge of her household duties; and that in consequence a woman had been and was and probably would have to be employed to do the work she had been accustomed to perform.

Under these circumstances, there was no error in the admission of the Carlisle tables to show the expectancy of the life of the wife. It was shown, that, at the plaintiff's age, the expectancy of life was about fifteen years.

If the jury believed the injury was permanent, and that it would disable the plaintiff for life from doing labor, the length of time that she would probably live affords some data proper for the jury to consider in determining the amount of pecuniary damage occasioned by the injury.

At common law where the action was for a tortious injury to a married woman, the husband suing alone 5. PARTIES: might recover for the expenses of a cure, for husband and wife. loss of service, and of the society of his wife. But in a suit in the name of the husband and wife, the cause of action was the injury to the wife, and the recovery was limited to damages for that injury, including, of course, the mental sufferings of the wife, and did not embrace the injury to the husband, who alone was liable to pay the medical attendant, and who alone was considered damnified by the loss of the services and society of his wife. *Fuller and wife* v. *R. R. Co.*, 21 Conn. 557, 571; 2 Redf. on Railways, 213, 3d ed. But our statute has changed the common law rule as to parties in such cases. Rev. 2775. This provides that "in an action brought by a man and his wife for an injury done to the wife, in respect of which she is necessarily joined as co-plaintiff, it shall be lawful for the husband to join thereto claims in his own right." See Rev. § 2771.

This was done in the present case. If there were doubt as to the propriety of the testimony as tending to show the extent of the injury to the wife, there can be none as

McDonald v. Chicago and Northwestern R. R. Co.

to its propriety as tending to show the extent to which it would deprive the husband of the services of the wife.

4. The point that the agreement of the plaintiffs with Mr. Latham was champertous, does not appear to have been **6. —— attorney** presented to the District Court. This agree-  **who receives** ment was set up in the answer as showing **per cent of re-** **covery.** that the proper parties plaintiff had not joined in the action. The point made was, that Latham, by virtue of this agreement was a real party in interest, and ought to have been a party to the action.

The court held, that this was not such an assignment as would defeat the right to recover (see 4th instruction refused), or make it necessary that Latham should be a party plaintiff (see 3d paragraph of court's charge). And in this view the court was correct.

. 5. It is next insisted, that the court erred in refusing to instruct as prayed by the defendant, and also in the **7. RAILROAD:** charge of its own to the jury. The view **rules of com-** **pany as to en-** taken by the court below will appear from **tering cars.** the instructions refused and given, which are set out in the statement of the case and need not be here repeated.

By recurring to the court's charge in chief it will be seen that he made the defendant's liability turn upon the question whether the step, which caused the accident, was loose. The jury were told in the charge that, if one of the steps was loose and not nailed down, by reason of which the accident happened, the defendant is liable unless the plaintiffs' own want of care contributed to the injury; and such want of care does not exist if the jury find that an ordinarily prudent person would have gone down the steps of the platform, and would not have waited until the passenger cars were opposite the passenger depot. See paragraphs 4, 5, 6, and 7 of the charge.

These instructions assume, and necessarily imply, that the plaintiffs had the right to enter the cars when and where they attempted it, if an ordinarily prudent person would have pursued the course which the plaintiffs did, that is, if such persons would have gone down the steps and not have waited for the cars to be drawn up to the platform opposite the passenger depot.

The law on this subject is this:

Railroad companies are held to a strict rule of accountability for the safety of passengers. This is salutary and right. To enable them properly to discharge this duty they have the power to make reasonable rules and regulations. They may make such rules and regulations respecting *the time, mode, and place of entering cars. These, when known to the passenger,* whether they have ever been written or published, or are posted up or not, he is bound to conform to; and he cannot violate them, and pursue another course and hold the company liable for damages thus occasioned, and which would have been avoided by conforming to the rules and regulations of the company, even though the jury may believe that an ordinarily prudent person would or might have adopted the same course.

A railroad company has a right to require all passengers about to enter their cars, to do so only when the cars are brought up to the platform for that purpose.

We cannot say, that it is a rule of law that the mere existence of a platform in front of a depot is necessarily notice to the passenger that the train will be drawn up at that place to receive him, and that the company requires that he shall wait and enter the cars at that place, and is prohibited from entering them elsewhere.

In many places passengers are required or allowed by the companies to enter trains elsewhere than from the platform in front of the passenger station or depot. In

many places, also, railroad companies fail to discharge a duty which they owe to the traveling public, by leaving them, without any assistance, to find out as best they can where the train is which they wish to take, how to reach, and when and where to enter it. Few persons traveling in strange places and on strange roads but have experienced the embarrassment arising from the failure of the company to have sign-boards, or officers or agents in attendance to give information of this character. See observations of MAULE, J., to the jury in *Martin* v. *R. R. Co.*, 81 Eng. C. L. on pp. 186, 187.

A company may require trains to be entered at a particular place, as, for instance, in front of the passenger depot. Often, however, there is no such requirement, and passengers are allowed, or at least not forbidden, to enter elsewhere.

Applying these general principles to the case in hand, we are of opinion that the instructions asked by the defendant were faulty, in so far as they assume, as a matter of law, that it is the duty of a passenger, irrespective of any knowledge on his part of any rule or regulation, to wait, before entering the cars, until the train is drawn up in front of the passenger depot or platform.

If he knew that it was to be thus drawn up, and that passengers were expected and required to wait until this should be done before entering the cars, he could not, with such knowledge, be justified in seeking to enter the cars in an unusual place and at an unusual time, and hold the company for damages thus occasioned. Why? Because he is not in the line of his duty and in the exercise of his lawful rights at the time.

If the plaintiffs attempted to enter the cars at a place which they knew, or from the nature of the circumstances surrounding them, ought to have known, was not prepared or designed for receiving passengers, and at which

they knew, or from the circumstances ought to have known, the company did not allow passengers to enter, the company would not be liable as *common carriers* upon their contract—however it might be if they had not been declared against in this capacity—for an injury happening in the prosecution of such an attempt. Why? The answer is, that, in making such an attempt, the plaintiffs would not be in the line of their duty, or in the exercise of any right conferred upon them by their contract with the company.

Applying the general principles before expressed to the charge of the court, and it is obvious that the minds of the jury were not directed to the proper grounds on which the defendant's liability or non-liability would depend. The jury should have been directed to ascertain from the evidence whether the railroad company had designated or set apart the platform as the place where it required all passengers to enter the cars.

8. —— injury from defective platform: liability of company as common carriers.

If so, and this was known to the plaintiffs, and they in disregard of such requirement, and in advance of time, and without justification for so doing, sought to enter the cars at another place, and in so doing, the wife met with the injury for which she sues, the company is not liable in this action as common carriers; and this is the capacity in which it is sued.

If, on the other hand, there was no rule or regulation known to the plaintiffs requiring them to enter at the platform, and they in good faith, and using reasonable care were seeking to find and enter the cars, the defendant would be liable for an injury caused by the defective platform or steps leading to it, since the plaintiffs, it being dark or nearly so, would have a right to presume that the platform and its approaches were in a safe condition.

We will not undertake to lay down any rule applicable

to the ever varied circumstances of all cases which may arise. The gist of such an action as the present, if no 10. — known rule or regulation of the company, rea-
general rule. sonable in its character, has been violated, is negligence; and what constitutes negligence so as to give an action, it is impossible to define in a rule which shall comprehend all cases.

The recent adjudications in the cases below cited, have been carefully examined, and they warrant us in laying down the general principles before expressed. Upon reason, that is, enlightened common sense, applied to the relation which railway companies sustain to the public, and applied to the nature of man and the mode in which the business of carrying passengers is practically and usually transacted, and upon the authority of decided cases, we are justified in laying down the following general rule as to the duty of such companies, to wit, that they are bound to keep in a safe condition all portions of their platforms and approaches thereto to which the public do or would naturally resort, and all portions of their station grounds reasonably near to the platforms, where passengers or those who have purchased tickets with a view to take passage on their cars, would naturally or ordinarily be likely to go.

· *Burgess* v. *R. R. Co.*, unfenced hole in station ground near depot building (95 Eng. C. L. 923, 1858); *Martin* v. *R. R. Co.*, defective light in station grounds where passengers would naturally go (81 id. 179, 1855); *Cormman* v. *R. R. Co.* (4 Hurlstone & Nor. 781, 1859), remarks of MARTIN, B., and WATSON, B., as to open place in platform; *Crafter* v. *R. R. Co.*, 12 Jur. N. S. 272; S. C., 1 Law R. C. P. 300, 1866; *Longmore* v. *R. R. Co.*, 19 C. B., N. S. 183; S. C., 115 Eng. C. L. 183, 1865; *Sawyer* v. *R. R. Co.*, 27 Verm. 377; *Murch* v. *R. R. Co.*, 9 Foster, 9, 39, 40, remarks of BELL, J.; *Frost* v. *R. R. Co.*, 10 Allen, 387, 1865.

For the error before mentioned in the instructions of the court, the judgment is reversed, and the cause remanded for a new trial in accordance with the rules and principles of law herein expressed.

:. Reversed.