Patten vs. Chicago & Nothwestern Railway Company.

PATTEN VS. CHICAGO AND NORTHWESTERN RAILWAY COMPANY.

(1-3) *Negligence, when a question for the jury.* (4) *Excessive damages.*

1. The submission to the jury of the question of negligence upon undisputed facts is not ground of reversal in any case, if the jury determined the question correctly.

2. It is only when it is clear that a particular fact constitutes negligence, that the court will so decide without the intervention of a jury. When the question is one of law and fact, or of a mixed character, it should be left to the jury.

3. The plaintiff, being a woman seventy-two years old, was put off, with her trunk, at defendant's depot. between nine and ten o'clock at

night. The depot was not upon any public highway; it was not open or lighted, and there was no one there to give her information; and plaintiff was not familiar with the locality; and, seeking in the dark the highway on which she knew the house where she was to stay was situated, she failed to find the way of access to such highway (which was across a field, over a stile on one side and through a gate on the other); and becoming bewildered she returned to defendant's platform, and afterwards, in trying to reach the other end of the platform to shelter herself from the cold wind, she fell down a flight of three steps in the platform (between the part designed for passengers and that designed for freight), and was injured: There was no defect in the platform or the steps, and the injury occurred more than an hour after she first left the platform. *Held*, that the questions whether the absence of any light at the depot or any person to give information, under all the circumstances, was *negligence* on defendant's part, and whether, if so, such negligence was the *proximate cause* of the injury, were properly left to the jury.

4. The verdict in this case, which was for $2,538 damages, is directed to be set aside as excessive; and the court intimates that upon the facts proven as to the nature and extent of the injury, it would not sustain a verdict for more than $1,200. *Goodno v. Oshkosh* (28 Wis., 300), and *Spicer v. Railway Co.* (29 Wis., 580), cited.

APPEAL from the Circuit Court for *Dane* County.

Action to recover damages for injuries alleged to have been sustained by plaintiff (in May, 1871), by reason of the negligence of the defendant. Answer, a general denial, and an averment of contributory negligence on the part of the plaintiff.

The case was tried at the November term of said court in 1871. The facts, so far as they bear on the questions of negligence, sufficiently appear in the opinion of Mr. Justice COLE. The evidence for the plaintiff as to the character and effects of the injuries for which the action was brought, tended to show that up to the time of receiving them she was quite well and active for a person of her age, was in the habit of traveling a good deal, and was able to do housework so as to earn her board; that by the fall her right arm was probably dislocated at the shoulder joint, and some bruises inflicted upon the head and side, so that she suffered very severe pain; that she was

treated the next day by a physician as for a dislocation; that she had been confined to her bed for three weeks, and part of that time could not be moved, and it was several weeks more before she could walk about; that she had been obliged to pay $80 to the physician who attended her, and also to pay for the services of a nurse, and the whole amount which she had been compelled to pay out up to the time of the trial was over $200, and there were still some unpaid bills for nursing. She herself testified: "I have to pay my board now; can't earn sixpence; my fingers are numb, and give considerable pain by spells; can do nothing with my right arm yet." Two physicians, who had examined her arm shortly before the trial, were examined in her behalf. One testified that there was "a tenderness and enlargement of a cord;" that he could not determine from the examination whether the arm "had been broken, fractured or dislocated;" that the right hand could be placed by him "in almost any position," and "it was just possible for her to do it;" and that he could have "no present opinion as to the extent of the injury." The other testified: "We concluded there was probably a dislocation. She seemed unable to use her arm freely; seemed surprised to find that she could with help put it on her head. The usefulness of the arm is considerably impaired; can't say for how long."

Defendant excepted to certain instructions given by the court, which are sufficiently stated in the opinion. The jury found a verdict for plaintiff for $2,538. Defendant moved for a new trial, on the grounds that the verdict was against the evidence and against the law; that the rulings and instructions of the court were erroneous; and that the damages were excessive. Motion denied, and judgment rendered for the plaintiff in accordance with the verdict; from which defendant appealed.

*Smith & Lamb*, for appellant:

The plaintiff was guilty of negligence which contributed to the injury complained of, if it was not the sole cause. Shear. & Redf. on Negligence, § 34 and cases cited; *Forsyth v. Boston*

*and Albany R. R. Co.*, 103 Mass., 510. 2. The question whether defendant was negligent in not keeping a light at its station for the accomodation of night passengers, or some person to direct them in leaving the grounds, was one of law, and therefore improperly left to the jury. 3.. The court, in its instructions, also erroneously assumed that the defendant's liability continued until the plaintiff had left its grounds in safety. *Gaynor v. Old Colony R. R. Co.*, 100 Mass., 208; *Nicholson v. Lancashire & Yorkshire R'y Co.*, 3 Hurls. & Colt., 534; *Osborn v. Union Ferry Company*, 53 Barb., 629. 4. The verdict, under the circumstances of the case, is excessive, and should have been set aside.

*Wm. F. Vilas*, for respondent :

The law imposes upon railroad companies the obligation of using ordinary caution and prudence to prevent injury to passengers upon their grounds, while going aboard trains and while leaving them ; and they are liable to all standing in that relation to them, for any neglect of that duty. *Cumberland Valley R. R. Co. v. Hughes*, 11 Pa. St., 141 ; *Philadelphia & Read. R. R. Co. v. Derby*, 14 How. (U. S.), 468 ; *Collet v. London & N. W. Railway Co.*, 6 Law & Eq., 305 ; *Mayor etc. of Lyme Regis v. Henley*, 27 E. C. L., 366 ; *Sawyer v. R. & B. R. Co.*, 27 Vt., 370 ; *Hegeman v. Western R. R. Co.*, 3 Kern., 9 ; *Smith v. N. Y. & H. R. R. Co.*, 19 N. Y., 127 ; *Thomas v. Winchester*, 2 Seld., 397 ; *Imhoff v. The Ch. & Mil. R. R. Co.*, 22 Wis., 681 ; *Longmore v. Great West'n R'y Co.*, 19 Com. B. (115 E. C. L.), 183 ; *Nicholson v. Lancashire & Yorkshire R'y Co.*, 3 Hurls. & Colt., 534 ; *Burgess v. Great Western R'y Co.*, 95 E. C. L., 923 ; *Martin v. Great Northern R'y Co.*, 30 E. Law & Eq., 473 ; *Osborn v. Union Ferry Co.*, 53 Barb., 629 ; *Willoughby v. Horridge*, 16 E. Law & Eq., 437 ; *Delamatyr v. Mil. & Pr. du Chien R'y Co.*, 24 Wis., 578 ; *Murch v. Concord R. R. Co.*, 9 Foster, 9 ; *McDonald v. Ch. & N. W. R'y Co.*, 16 Iowa, 124 ; *Foy v. London etc. R. W. Co.*, 18 Com. B. (N. S.), 225 ; *White v. Winnisimmet Co.*, 7 Cush., 155. 2. Situated as this station was at a place re-

mote from the highway and difficult of access, the omission of the defendant to light it, or place any one in attendance to direct or assist passengers in leaving, was negligence.  *Burgess v. Great West'n R. R. Co., Nicholson v. Lancashire etc. R. R. Co., Osborn v. Union Ferry Co.* and *Martin v. Gt. Northern R. R. Co.*, cited *supra*; *Dreher v. Fitchburg*, 22 Wis., 675.  Leaving that question to the jury, if an error, was one of which the defendant cannot complain, since they decided it correctly.  3 Gra. & Wat. on New Trials, 832, and cases cited.  3. The negligence of the defendant was the *proximate* cause of the injury.  *Kellogg v. Ch. & N. W. R'y Co.*, 26 Wis., 223.  4. The damages are not so excessive as to indicate any improper influence or bias on the part of the jury, and justify the court in setting aside the verdict.

COLE, J.   This action is brought by the plaintiff to recover damages for an injury sustained by her in consequence, as is alleged, of the negligence of the defendant corporation.  The injury was sustained at the Syene station, about five miles from Madison, under the following circumstances :

The plaintiff, being an old lady about seventy-two years of age, on the 10th of May, 1871, purchased a ticket of the defendant's agent at Madison for Syene, and left on the train for that place at 9:30 that evening, arriving at the station there at 9:45, the usual time for the passenger express train going to Chicago.  The train stopped but a moment, the conductor aiding the plaintiff to get out on the platform which surrounded the depot building, where she was left with her trunk.  This was a combination depot, designed both for freight and passengers ; the passenger room being at the north end, and having a floor about two feet lower than the freight room ; and the outside platform corresponded to the interior arrangement, having on each side of the building three steps in the platform between the freight and passenger ends.  The depot building and grounds were not on the highway, but were approached from

the public road through a field from the west. This rendered it necessary to pass two fences, one on the highway, where there was a gateway, and the other a stile between the field and railroad track. There was no person and no light at the depot when the train arrived, and the doors of the depot were fastened. The plaintiff desired to go to the house of a friend living on the highway, seventy-five or eighty yards west of the depot. She left her trunk standing on the platform, passed down the steps at the south end thereof on to the ground, but owing to the darkness she was unable to find her way to the highway. After wandering around an hour or more on the defendant's grounds, she came safely back to the depot-platform where her trunk was, and in attempting to go from the south to the north end of the platform, where she would be less exposed to the wind, which blew coldly from the south, she fell down the steps on the platform, and was injured. She did not know of these steps being in the platform; and if she ascended them when she left the platform to go to her friend's house, she doubtless did not notice them. She was not very familiar with the locality, although she knew in what direction from the depot her friend's house was situated. It is not claimed that there was any defect in the platform or steps, or that this was an unusual or dangerous arrangement in and about railroad depots. All questions as to whether the plaintiff was guilty of want of care or negligence contributing to the injury complained of, seem to have been fairly submitted to the jury upon the evidence. But the leading, and practically the only question raised by the motion for a nonsuit, and involved in some of the instructions given by the court, was, whether there was any evidence in the facts proved, from which negligence on the part of the defendant as the proximate cause of the injury could be inferred. The question whether there was negligence or want of ordinary care on the part of the company was substantially made to depend upon the entire absence of light in and about the depot, when the plaintiff landed, and the failure to have

some one there to give necessary directions to passengers coming upon the train to that station. Upon this branch of the case the court directed the jury, that, whether ordinary prudence and caution required that there should be a light and some one at the depot at the time of the arrival of the train, so as to enable the plaintiff to leave the train and grounds in safety, was a question for them to determine, and that the plaintiff could not recover unless they found the defendant negligent or guilty of want of ordinary care under the circumstances by being wanting in these precautions. This charge is criticised in two particulars. First, it is said that as the fact was undisputed that there was no light, nor any person at the depot at the arrival of the train, the question whether this constituted a breach of legal duty on the part of the defendant was one for the court, and not for the jury; and second, that the charge was erroneous, because the injury was not received when the plaintiff was attempting to leave the station, as it appeared that she was safely landed and got safely away from the platform and depot, and therefore want of light on the arrival of the train could have no relation to the injury which happened some two hours afterwards, when, upon getting "a little turned round," and losing her way, she returned, ascended the platform, and then, in attempting to go from the south to the north end of the depot, fell and was injured.

In answer to the first objection it is said by plaintiff's counsel, that, if the law under the circumstances imposed upon the company the duty to light its depot, or to have some one there to aid by directions persons coming on the train and stopping at that station, and to enable them to leave the grounds in safety, then submitting to the jury the question whether this was negligence was favorable to the defendant, and the defendant has no ground of complaint if the jury decided the law correctly and as the court must have done. It seems to us that this is a sufficient answer to the objection. Besides, it may further be remarked that there is no absolute rule as to

what constitutes negligence in a case like this. Whether there was a want of such care and prudence as the company should exercise in the particular case, in not having a light in or about the depot when the plaintiff left the train, is not a pure question of law, but rather one of law and fact. In some cases it might constitute negligence, and in others not. It is only where the question is clear that a particular act constitutes negligence, that the court will decide without the intervention of a jury. But where the question is one of law and fact, or of a mixed character, it should be left to the jury. Regard must be had to the circumstance that the depot in question was not upon a public road, where the way to and from it was plain and not easily mistaken. The approach to it was through a field and over a stile, which one not familiar with the locality might readily miss. These and other circumstances attending the transaction would seem to render it quite proper to submit the question as to whether ordinary prudence and care did not require that there should be a light and some one at the depot at the time of the arrival of the train, so as to enable any one stopping there to leave the grounds in safety. And therefore, so far as the particular objection we are now considering is concerned, we think there was no error in the court instructing the jury, as it did, that if they found, from all the facts proved, that the defendant was negligent in not having a light in and about the depot, and some one there, at the time of the arrival of its passenger trains, to give the necessary directions to passengers and afford the necessary light to enable them to leave the grounds in safety, and that this was the cause of the injury, the liability of the company was established, providing the plaintiff herself exercised due care and prudence on leaving the train and in attempting to leave the grounds of the defendant company.

The other objection not only applies to the charge above referred to, but also directly bears upon the following instructions given by the court:

"If you find the defendant negligent in not furnishing for the safety of passengers the precautions named, or at least one of them, and the plaintiff in the exercise of ordinary care, and still further find that such want of precaution led to the injury and was the primary and direct cause of it, though it did not occur for some time, the defendant is still liable, if you find that it occurred before she left the grounds of the defendant, and from want of light and proper direction in starting."

"And if, from want of these precautions, or one of them, to aid her in leaving the train and depot, she became bewildered, and wandered about the grounds and depot of the company until the injury occurred, the defendant would not be relieved from liability even though her bewilderment thus caused contributed to the injury or accident by which it occurred."

Exceptions were taken to these portions of the charge.

Now, assuming that the negligence of the defendant might be inferred from the fact that the depot building was closed and not lighted, and that there was no person about to assist passengers stopping there by directions, etc., the question arises, Was such negligence the proximate cause of the accident, so as to be actionable? It is claimed on behalf of the company that it was not, because the facts of the case show that the want of a light at the depot on the arrival of the train did not lead to the injury, and could not possibly have been the direct and proximate cause of it, since the plaintiff got safely away without any such light or directions.

I certainly entertained considerable doubt upon this point on the argument, and I am free to confess that my mind is not now, after all the reflection I have given the subject, entirely clear upon it. My brethren, however, think the fact that the plaintiff did get away from the depot and come back to it again after vainly endeavoring to find her way out to the highway, under the circumstances, placed her substantially in the same situation as though she were hurt in trying to get away on first leaving the train. If this is a correct view of the case (and I am not

prepared to say it is not), then I have no doubt there was some evidence of negligence on the part of the defendant (negligence which caused the injury), to go to the jury. For I should be unwilling to subscribe to the doctrine that a railway company, which sold tickets for, and whose passenger trains stopped at, a station situated off from the highway, like this one, was under no obligation to have its depot building open and lighted for the convenience and safety of those who might happen to leave its trains at that place in the dark, and perhaps in storms which might endanger health and even life before they could find shelter and protection elsewhere. The law is well settled, that it is the duty of railway companies to provide reasonable accommodations at their stations, for passengers who have occasion to travel on their roads. *McDonald v. The Chicago & Northwestern Ry. Co.*, 26 Iowa, 124. They are under obligation "to keep in a safe condition all portions of their platforms and approaches thereto, to which the public do or would naturally resort, as well as all portions of their station grounds reasonably near to the platforms, where passengers, or those who have purchased tickets with a view to take passage on their cars, would naturally or ordinarily be likely to go." Id. See also *Martin v. The Great Northern Railway Co.*, 81 E. C. L., 179; *Burgess v. The Great Western Railway Co.*, 95 id., 923; *Longmore v. The Same*, 115 id., 183; *Nicholson v. The Lancashire & Yorkshire Railway*, 3 Hurlst. & Colt., 534; *Hulbert v. New York Central*, 40 N. Y., 145. The able counsel who argued this case for the defendant in effect conceded, that, if the plaintiff had fallen down the steps and been injured when she first left the train, on account of the absence of light, or if the platform or approaches thereto were unsafe and an accident had occurred in consequence thereof, then the company would have been liable. There can be no doubt about the responsibility of the company under such circumstances. The law clearly imposes upon railway companies the obligation of furnishing safe, convenient and proper means of ingress and egress to and from

trains, platforms, station approaches, etc. ; and the principle is well settled, that a person injured, without fault on his part, by any defect or obstruction in a way or passage over which he has occasion to pass for a lawful purpose, can recover damages for the injury sustained, against the corporation or individual responsible for the defect. *Tobin v. Portland, Saco & Portsmouth Railway Co.*, 59 Maine, 183. Of course, the principle is elementary and well understood, that the damage to be recovered must always be the natural and proximate consequence of the negligence complained of; and it is the operation of that principle which, the defendant company claims, exonerates it from liability to the plaintiff upon the facts of this case. But it is manifestly impossible to say that the negligence of the company in failing to have a light at the depot was not, in the order of events, the sole and producing cause of the injury. True, the plaintiff passed in safety from the platform and away from the depot when she first left the train, and after some time returned to the depot platform and fell down the stairs. But the negligent act of the company might have necessarily and naturally caused the bewilderment of the plaintiff, and have rendered it impossible for her to find her way to the highway. It is more than probable, had there been a light at the depot, she would have been able at once to have found the stile and obtained a knowledge of all the surroundings of the locality. It is quite fair to assume that she would have seen the steps in the platform, so that if she had afterwards become bewildered and lost, and had returned to the depot for safety and protection, she would have known of their existence and have guarded against a fall from them. At any rate, it may fairly be presumed that she received the injury while making every reasonable effort to seek safety, and relieve herself from the position in which she had been thrown by failure of the company to perform its duty. The absence of light at the depot when the train arrived was still operating and affecting her conduct; and it is possible that without this negligent act on

the part of the company the injury would not have happened. At all events, we think the question was properly submitted to the jury to determine, whether, under all the circumstances, the failure of the company to have a light at the depot on the arrival of the train was the direct and proximate cause of the accident. The counsel for the company, to show that this action was not maintainable, referred to the case of *Forsyth v. Boston & Albany Railway Co.*, 103 Mass., 510. In that case it appeared that the plaintiff alighted from the defendant's cars at night, at a station, and on one of two platforms extending along each side of the tract to a highway (which, as the plaintiff knew, crossed the railroad), having also a step at the end next the highway. Instead of walking along the platform, he voluntarily stepped from it with the intention of going obliquely across the track to the highway, and, when he stepped off, fell into a cattle-guard dug across the track, and was injured. The night was quite dark, and there was no light at the station or on the premises of the defendant. The court held, in effect, that the plaintiff was guilty of negligence in voluntarily and unnecessarily stepping down from the platform upon the track in the dark, without taking any precaution to ascertain whether he could do so with safety. He might have reached the highway by walking along the platform provided for that purpose by the company. But he assumed that the construction and condition of the railroad track were such that he might safely walk across it in the dark towards the highway, without following the usual walk provided by the company. We do not think there is anything in this case in conflict with the views we have expressed above. And these remarks, we think, sufficiently dispose of all questions arising upon the exceptions taken to the ruling of the court on the motion for a nonsuit, and upon the instructions given and refused by the court.

There was a motion made upon the minutes of the judge to set aside the verdict and for a new trial, upon several grounds, one of which was that the damages awarded by the jury were

excessive.   The jury assessed the damages at the sum of $2,538, which we deem quite disproportionate to the injury. We shall not dwell upon the evidence relating to the character and extent of the injury.   It is sufficient to say that there was nothing in the case which warranted the jury in awarding any such amount of damages.   We are very clear that, unless the proof is different on another trial, anything over $1,200 would be excessive.   We state the maximum of the verdict for the guidance of the court and jury.   In a number of cases which have come before the court in this class of actions, we have felt compelled to interfere and grant a new trial, where the amount of damages awarded was such as to indicate some partiality or improper bias on the part of the jury.   *Goodno v. The City of Oshkosh*, 28 Wis., 300 ; *Spicer v. Ch. & N. W. R. W. Co.*, 29 id., 580.   The verdict in the present case is of the same character, and must be set aside.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial ordered.

NOTE.—The following article by Judge REDFIELD, which appeared in the American Law Register for January, 1874, contains a discussion of the questions involved in the preceding case, and is deemed by the justices of this court of sufficient value to be printed in connection therewith:

THE RESPONSIBILITY OF PARTIES FOR SECONDARY OR REMOTE CONSE-
QUENCES OF ACTS OR OMISSIONS; BEING A COMMENTARY UPON THE
IMPORT AND APPLICATION OF THE MAXIM, *In jure non remota causa,
sed proxima spectatur*.

The fear lest we might have been misapprehended by some in what we said in regard to the force and applicability of the maxim, *In jure non remota causa, sed proxima spectatur*, to legal questions, has induced us to re-examine our views, and restate them more in detail than we did in our former comments upon it.  We had no purpose of intimating any opinion against the soundness of the maxim, in cases where it was strictly applicable.  In its literal import it has reference indeed to *causes* alone, and not to *consequences*.  And although these may be synonymous in common acceptation, they are not so in the form and manner of investigation, the one calling us to look back and the other forward.  In looking at causes, the law, in many instances, will regard only the proximate cause of the

act, while science and philosophy may curiously pry into remote or secondary causes. If, in a trial for murder, the accused inflicted a mortal wound upon the deceased, in cool blood, without any legal excuse or justification, the law pronounces it murder, and accordingly requires the conviction and punishment of the offender. But speculation and philosophy may look into the antecedent causes, leading up to the final act. It may find some apology or palliation for the offense, short of a legal excuse, in the hereditary mental taint or infirmity of the ancestral lineage of the accused, or in some neglect or abuse of his education and training; or it may search out some extenuation of the act, in the provocation of the slain. He may have been a seducer, or of bad morals generally, or possibly an offender against some cherished policy, institution, or party in society: a polygamist, or a pirate, making war upon mankind generally, and may thus, in the estimation of current opinion, have deserved his fate. But the law and stern justice shuts its eye to all this, and demands its vindication by the death of the offender. These illustrations, showing how the law, in looking into the causes of actions, will not consent to go behind the very proximate one, might be carried much further, showing fully the application of the maxim, in its literal and strict sense, to legal subjects. But they are too numerous to require repetition.

Lord BACON's paraphrase of the maxim shows fully how the author regarded its application to the law. "It were infinite for the law to consider the causes of causes and their impulsions, one of another; therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree."

But the maxim in its application to *consequences* has received a much more limited application, the law holding parties responsible for the remote consequences of their conduct in many instances, and especially where such secondary results might naturally have been anticipated as the not improbable consequences of the primary act. Thus, in the very recent case of *Lawrence v. Jenkins*, 21 W. R., 577; L. R., 8 Q. B., 274, the defendant was held responsible for the loss of plaintiff's two cows, by a consequence very remote from the primary act, ultimately resulting in the death of the animals. The cows were depasturing in the plaintiff's field, adjoining defendant's woodland. The two fields were separated by a fence upon defendant's land, but which he was bound to maintain. Defendant sold timber or wood growing upon his land to one Higgins. He, in cutting it, felled a beech tree across the fence, making a gap sufficient to allow the plaintiff's cows to pass into the defendant's close, where they ate of the foliage of a laurel tree, subsequently felled by Higgins, which, being poisonous, caused the death of the cows. The court held the defendant bound to keep the fence constantly in repair, and not excused by

reason of the temporary break caused in the manner before stated; and that, the consequence of the non-repair being the ultimate loss of the cows, the damage was not too remote to be recovered. The case is similar to *Vicars v. Wilcox*, 8 East, 1, where the plaintiff's horses escaped into defendant's close by reason of his not repairing his fences, and were there killed by the falling of a haystack; and he was held responsible. The whole range of the action on the case is based upon consequential damages, where the primary act caused no injury. The famous case of *Scott v. Shepherd*, 2 Wm. Bl., 892, and Smith's note, 1 Lead. Cas., 210, turns upon the distinction between the direct and immediate, and the remote consequences of an act; the defendant being held responsible in the former case, in trespass, and in the latter, in case; but no question being made that he is equally responsible in both cases, which he could not be, upon any strict application of the maxim we are discussing, both as to proximate and remote *consequences* of an act. The very first illustration used by Mr. Smith in his note to the case of *Scott v. Shepherd*, would have no application, if the defendant were only responsible for the immediate consequences of his act, by leaving a log in the streets, over which the plaintiff subsequently fell and suffered injury. Instead of showing the distinction, as is intended, between responsibility in trespass and case, it would show the difference between responsibility to an action, and no responsibility at all. The attempt of some of the courts to distinguish between the responsibility of the party who negligently sets fire, for the first building burned, and those subsequently fired by communication from the first, holding him only responsible for the first and not for those subsequently burned, first opened our eyes to the conviction that we were all falling into or liable to fall into an error in the application of the maxim in question. *Ryan v. N. Y. Central Railway*, 35 N. Y., 210; *Pennsylvania R'y v. Kerr*, 62 Pa. St., 353. But these cases have not been countenanced by the decisions in other states: *Hart v. Western R'y*, 13 Met., 99; *Safford v. Boston & Maine R'y*, 103 Mass., 583; *Feut v. T. P. & W. R'y*, 4 Chicago Legal News, 326; 1 Redf. Am. R'y Cases, 358. Broom, Legal Maxims, 165, says the maxim is "usually cited with reference to that peculiar branch of the law which concerns marine insurance." The learned author cites no cases to illustrate its application, except from this branch of the law, with the exception of two cases from the law of carriers, *Siordet v. Hall*, 4 Bing., 607; *Davis v. Garrett*, 6 Bing., 716; and he says expressly that "it has no application to cases founded in fraud or covin;" or to criminal causes.

We may here find, perhaps, in some sense, the proper limit of the application of this maxim in estimating consequential or remote damages, as the result of an unlawful act. Where the defendant is guilty of no moral wrong, as in the case of failure to perform a contract, or the exercise of a wrongful act of dominion over the property or estate of another,

through innocent misapprehension or mistake, the damages will be limited to the immediate and direct result of the act or omission, and this rule is applied with great strictness in cases of marine insurance. For instance, in *Cator v. The Great Western Ins. Co. of New York*, 21 W. R., 850, Law Rep., 8 C. P., 552, where the policy stipulated for the payment of all damages "caused by the actual contact of sea-water," some of the cargo, being tea, was damaged by such cause, and that portion being separated from the portion not damaged, it was found the latter could not be sold in the market for its real value, by reason of it being known that the damaged portion had been separated from it, and the consequent apprehension that some deteriorations had also occurred in the whole cargo. But the court held the insurers not responsible for such consequence. And even in regard to insurance cases the application of the rule in regard to remote or proximate consequences is very different in different cases, some courts enforcing it with great strictness, and others allowing considerable relaxation. For instance, in *Peters v. The Warren Ins. Co.*, 3 Sumner, 389; *S. C.*, 14 Pet., 99, it was held that money paid in pursuance of a decree of a foreign admiralty court, for damage done another vessel by an accidental collision at sea, was damage caused by the perils of the sea. But the contrary was held in *De Vaux v. Salvador*, 4 Ad. & E., 420; and the later American cases seem tending to the latter result. *Gen'l Mutual Ins. Co. v. Sherwood*, 14 How., 352; *Matthews v. Howard Ins. Co.*, 11 N. Y., 9.

But there are some cases of contract where damages for the natural and known consequences of a mere breach of contract, or duty, have been allowed to be recovered. As where the plaintiff lost the use of his mill by reason of machinery being defectively set up in it. *Clifford v. Richardson*, 18 Vt., 620. But the loss of the use of a mill by reason of a joint owner not repairing the dam, cannot be recovered, as the plaintiff might himself repair it. *Thompson v. Shattuck*, 2 Met., 615. And in general it may be affirmed, that consequential damages are not recoverable for mere breach of contract, or when there is no special fault or cause of blame attaching to the defendant's conduct.

But in cases of willful or negligent injury, the plaintiff is commonly allowed to recover all such consequential damages as were within the knowledge and contemplation of the defendant at the time of the act or omission. *Greenland v. Chaplin*, 5 Exch., 243. In *Regby v. Hewitt*, id., 240, the rule is thus stated by POLLOCK, C. B. After expressing doubt, whether the defendant can be held responsible for all the possible consequences of his negligence, the learned judge adds, "Of this I am quite clear, that every person who does wrong, is at least responsible for all the mischievous consequences that may reasonably be expected to result, under ordinary circumstances, from such misconduct." This seems to

be the present most approved rule upon the subject. This rule was applied in *Crouch v. Great Northern R'y*, 11 Exch., 742, where a carrier acted willfully, with a view to injure the plaintiff's business. So also in *Mullett v. Mason*, L. R., 1 C. P., 559, where the plaintiff bought a cow upon a warranty of soundness and that she had been raised in England, and she proved to be a foreign cow, and infected his herd, whereby he lost other cows, it was held he might recover such consequential damage. And consequential damages were allowed to be recovered in *The James Seddon*, L. R., 1 Adm. & Eccl., 62; *S. C.* 12 Jur. N. S., 609. But in *Gee v. L. & Y. R'y*, 6 H. & N., 211, consequential damages were denied on the authority of *Hadley v. Baxendale*, 9 Exch., 341, both of which cases were against carriers for not delivering goods in time, and for consequential damages during the interval of delay. But in an action for not delivering machinery in time, the value of the use of the machinery during the period of its improper detention was allowed to be recovered. *Priestly v. N. J. & C. R'y*, 26 Ill., 205.

We have thus shown, we trust, that the maxim in question was never regarded as of much practical force, in its application to the law; (in other words, in the particular form of its announcement by Lord BACON, Bac. Maxims, Reg. 1); and that its adoption was confined to the law of insurance, mainly, until a very recent period; and that at the present day the authorities will not justify its strict application beyond the matter of contracts and nominal torts where there is no proof of carelessness or wrong intent. And even within these narrow limits, the conflict of authority as to the extent of the application of the maxim would suggest extreme caution in regard to placing much reliance upon it. So that, upon the whole, we may safely conclude that those consequences which the law treats as too remote for consideration in estimating damages, must be such as the defendant had no just ground to expect would flow from his act — in other words, such as were, upon the basis of his knowledge, rather accidental than natural or ordinary. We shall not be expected to discuss the much vexed question, what amounts to an accident, or what damages are natural and what accidental. The term, with reference to accident policies, has been defined as "any event which takes place without the foresight or expectation of the person acted upon, or affected by the event." WITHEY, J., in *Ripley v. R'y Passenger Assurance Co.*, 2 Bigelow Ins. Cas., 738; *Providence Life Ins. Co. v. Martin*, 32 Md., 310. The cases are considerably numerous where this definition is substantially confirmed. And as it so nearly coincides with the rule before stated, we shall not say more, trusting that we have sufficiently removed any ground of misapprehending what we before said upon the force and application of the maxim.