## MAGORIC *v.* LITTLE, Receiver, etc.

*(Circuit Court, S. D. New York. November 25, 1885.)*

1. COMMON CARRIER—FERRYMAN—LIABILITY FOR NEGLIGENCE.
     A common carrier of passengers and teams by a ferry is bound to furnish safe approaches to and passages from the ferry-houses to the streets for all persons who are likely ordinarily to use the ferry.

2. SAME—DIRECTION BY WATCHMAN—INJURY.
     Where a stranger using the ferry after night is directed by a watchman in charge to take a certain direction, and, while following that direction, is injured, without fault of his, by a passing train, the proprietors of the ferry will be liable for such injury.

3. SAME—RELEASE—IMPROPERLY OBTAINED.
     Where a release of claim for damages sustained by negligence on part of a common carrier is unjustly obtained, it will not be binding.

In Equity.
*L. A. Fuller,* for plaintiff.
*De Forest & Weeks,* for defendant.

WHEELER, J. From the pleadings and proofs it appears that the defendant is receiver and has control of a ferry for passengers and teams from the foot of Liberty street, in New York, to the depot of the railroad, in Jersey City, as well as of the railroad; that there are doors for teams to pass out of the ferry-house, from the ferry to the street, to the right and to the left of the doors for the exit of passengers on the Jersey City side of the river, and that the passage to the right leads to the left to the street, and to the right, to the tracks of the railroad; that the passage to the right is left open for express wagons to go to the tracks to reach express cars; that the plaintiff and his wife were riding with her son in his wagon, driven by him, and were intending to cross the Courtlandt-street ferry to go with him from New York to Bloomfield; that by mistake they took the defendant's ferry, and undertook to drive out of the ferry-house at Jersey City at the passenger exit, and were directed by a watchman in charge

to go out at the other door to the right; that they drove out at the door to the right, as directed; that it was very dark out there, and there was no one to direct where to go, and they took the passage for express wagons and followed that until they reached the tracks, and in undertaking to cross them were caught and held in a switch; that at that time a train was backing down without warning and struck them, injuring the plaintiff severely, and injuring the horse and wagon of the step-son, which were of the value of about $200, so that they were nearly or quite a total loss; that the step-son made claim for damages of the defendant, who caused the injury to him and to the plaintiff to be investigated; that the defendant denied legal liability for the damages, but finally agreed to pay the step-son $200 for his damages if he would procure the plaintiff to release his claim for damages for $100; that the step-son was very desirous of procuring his $200, and importuned the plaintiff, while he was weak in body and mind, and suffering from the injury, to accept the $100, and, by persuading him to believe that he would never get any more, and perhaps not anything unless he took that, procured him to accept that and execute a very formal and full release of all claims; that the plaintiff tendered back the $100 before bringing this suit, which is brought to set aside the release, and for a decree for the payment of the damages.

The defendant insists that there was no legal liability and relies upon the release if there was. It is stipulated that if the release is set aside, the liability of the defendant and the amount of damages may be determined in this suit.

The first question is as to the liability of the defendant. He was a common carrier of passengers and teams by the ferry. As such he was bound to furnish safe approaches to and passages from the ferry-houses to the streets for such persons as would ordinarily use the ferry, as well strangers and those unfamiliar with the place as those accustomed to it; and for use at all times when the ferry was in operation, whether by night or by day. The plaintiff and his companions took the way out which they were directed to take, and which was provided for passengers to take when traveling by team. When they got outside, there was nothing to guide them to the street, and the way to the tracks was open, with nothing to warn them away from it as a place of danger. No precautions were taken to keep them away from there, and neither the usual means nor others were taken to warn them of the dangers of moving trains, as at crossings, to make it safe for them to be there. This defect in safe egress was one for which the defendant appears to be liable, as for a defect in the floor of the ferry-house itself, or in the way out of it; and upon the same ground that railroad companies are liable for injuries caused by defective means of approach to and departure from their depots. *McDonald* v. *Chicago & N. W. R. Co.*, 26 Iowa, 124; S. C. 2 Redf. Ry. Cas. 525; S. C. 9 Amer. Law Reg. (N. S.) 10; *Beard* v. *Con-*

*necticut & P. R. R. Co.*, 48 Vt. 101. They were not in fault for being on the track, for they were led there by the directions to take the door leading in that direction and by the open passageway to the tracks for the express wagons. Upon these considerations the plaintiff appears to have had a valid claim against the defendant for the damage done to him on that occasion largely in excess of the $100 paid.

The defendant caused the claim to be investigated, but had no negotiation with the plaintiff about settling it. The procurement of the release for $100 was left to the step-son as a condition for the payment to him of his damages. The person who would naturally be interested for him was enlisted against him, and he was importuned and brought to decide while he was weak. Under these circumstances the release does not appear to be so fairly obtained as to be justly and equitably binding. 1 Story, Eq. § 251.

The plaintiff appears upon the whole case to be entitled to a decree setting aside the release, and on the stipulation to a decree for the payment to him of his damages. Upon the evidence as to the effect of the injury upon his ability to labor, his health, and capacity for enjoyment, his damages are found to be $4,000. Let a decree be entered for the orator setting aside the release, and for the payment to him by the defendant, as receiver, of the sum of $4,000 damages for the injury, with costs.