JUDGE PRYOR
delivered the opinion oe the court.
Mary Hoehl, an infant twelve years of age, instituted this action, by her next friend, against the Paducah & Memphis Railroad Company to recover damages for the negligence of its employees in running its train, by which the cars of the company ran over the plaintiff, crushing one of her legs, rendering amputation necessary, and inflicting upon her other great bodily injuries. A verdict and judgment were rendered against the company for $11,000, from which this appeal is prosecuted.
, It appears, from the evidence, that the appellee lived with her parents in the town of Mayfield, and that the line of the railroad ran through a part of the town. The father of the appellee lived on the west side of the track, in what is called Boxtown, and kept a shop on the east side. The schools and business houses of the town are located on the east side of the track, and those living on the west side, or in Boxtown, were in the habit of crossing the track of the road to reach the business part of the town at the point where the accident happened, which, as the proof conduces to show, was the principal crossing.
The appellee, in returning from school in the east part of the town, and when on her way home, reached the crossing, but found the way blocked by a freight-train on the track. She was advised by some one not to attempt to cross until this train moved off; and the train leaving in a few moments, in the attempt to cross the main track she was struck by the cowcatcher of a train or engine following immediately after the train that had just left, and so seriously injured that one of her legs had to be amputated. This last engine was on the track, a distance of seventy-five yards from the freight-train, and awaiting its departure before it moved off.
At the time the first train left she was standing in the center of the side-track, and the distance from that point to the main *44 track, where the injury occurred, was only a few feet. The proof tends to show that she could not see, from the point where she was standing, that another engine was on the track, by reason of some cars that stood on the side-track and obstructed the view. It also appears that the engine inflicting the injury was moving at about four or five miles an hour, and that the appellee was not seen by any of the employees on the train until she was in the act of stepping on the main track and within seven or eight feet of the approaching engine. There is some conflict in the testimony as to whether any signal was given at the time this engine began to move from its place on the track after the freight-train had departed. The appellee had on at the time her mother’s sun-bonnet, and says she did not look to see whether there was a train approaching or not.
The court below, at the instance of counsel for the appellee, instructed the jury in substance, “That if the appellee, when attempting to cross the defendant’s railroad at the usual crossing for foot-passengers, was prevented from seeing the train or engine by which she was injured on account of the cars standing upon the side-track, then it was the duty of the managers of the train, by blowing its whistle or continuously ringing its bell until they passed the crossing, to give notice of the approach of the train, and if they failed to do so it was negligence on their part, and such as rendered them liable for the injuries to the plaintiff,” etc.
It was incumbent on the part of the appellee to show negligence on the part of the company or its employees in order to recover; but the fact that some of the-cars of the appellant stood upon the side-track and obstructed the view of the road was no evidence of neglect; nor was the latter required, by reason of this fact, to exercise a greater degree of diligence to prevent injury to others. The cars on the side-track were stationed where the appellant had the right to place them, and *45 it was the duty of those attempting to cross the track to place themselves in a position where they might see the approaching trains. Still it devolved on the appellant to give sufficient signals of the approach of its trains to such a public crossing as this is shown to have been where the injury occurred. This may be done by blowing the whistle, ringing the bell, or by some other signal sufficient to give the proper warning of the train’s approach. There is no statute in this state designating the character of signal necessary to be given, and therefore the appellant must give such signals as are usual and customary in such cases and necessary to give warning of the coming train; aud there can be no doubt but that greater caution must be used in moving a train of cars through a town or to a crossing within the town than would be required to be exercised in approaching the ordinary crossings in the country. The failure, therefore, to give such a signal as will be sufficient to apprise those who are at or near such public crossings of the approach of the train must be regarded as negligence. Whether the proper signals were given in this case, or the necessary precautions used by the company at the time the accident occurred to prevent injury, is a question of fact to be determined by the jury-
It was error on the part of the court below to authorize a finding because the company failed to ring its bell or blow its whistle continuously until it passed the crossing. If sufficient signals were given to notify those about to cross of the approach of the train, such as were usual and customary, arid that persons exercising ordinary prudence and care would have regarded, it is all that can be required of the company. (Shearman & Redfield on Negligence, page 538.)
If the testimony introduced by the appellee has established negligence on the part of the company, a question we do not determine, and it further appears that there was negligence on her part contributing to the injury, and but for which the *46 accident could not have happened, she was not entitled to a verdict.
The appellee is shown to have been a sprightly, intelligent girl. She lived near the depot, and was familiar with the movements of trains, and must have been aware of the necessity of taking proper precautions for her own safety when attempting to make the crossing. Although her judgment as to the means of safety and the care to be used is not to be measured by the discretion of one of more mature years, still she must have exercised what is to be regarded as a reasonable precaution in one of her years for her own safety. She had crossed the track of this road nearly every day for some time prior to the accident in attending her school on the east side of the town, and it was her duty to take notice of the usual and customary signals given by trains on their approach; and if such signals were given by the train inflicting the injury, and sufficient to warn one of ordinary diligence and care of its approach and the danger of crossing at the time, the injury is the result of her own negligence, and she is without remedy, unless the jury should believe that those managing the train were aware of her negligence, and after discovering her upon the track could, by the exercise of proper care and diligence, have avoided the injury.
“If one contributes to produce the injury of which he complains, so that but for his concurring and co-operating fault the injury could not have happened, he can not recover at law or equity, except where the direct cause of the injury is the omission of the other party, after becoming aware of the injured party’s negligence, to use a proper degree of care to avoid the consequences of such negligence.” (Shearman & Redfield on Negligence, p. 25; Card v. New York & Harlem Railroad Co., 50 Bar. 39.)
While the burden of proof is on the appellee to make out her case, the onus is on the appellant to show that the appel *47 lee’s own negligence contributed to the injury complained of. The authorities on this branch of the case are somewhat conflicting ; but it seems to us that it is reversing a well recognized rule of pleading in requiring the plaintiff to allege and prove the non-existence of facts that when established would constitute a defense to his own action.
When the plaintiff has shown the negligence of the defendant, and the injury caused by it, the cause of action is made out, and unless his own proof shows contributory negligence on his part he is entitled to recover. (Louisville & Portland Canal Company v. Murphy, 9 Bush.)
In some of the states it has been held that the plaintiff must make affirmative proof of the absence of negligence' on his part, upon the ground that if in fault himself he can not recover. (Allyn v. Boston & Albany Railroad Co., and cases cited, 105 Mass. 78.)
In the case of Oldfield against the New York & Harlem Railroad Co. (14 New York, 310), Denio, justice, said: “I am of opinion that it is not a rule of law of universal application that the plaintiff must prove affirmatively that his own conduct on the occasion of the injury was cautious and prudent.”
In the case of The Railroad Company against Gladmon (15 Wallace, page 407) the Supreme Court held: “The later cases in the New York Court of Appeals, I think, will show that the trials have almost uniformly proceeded upon the theory that the plaintiff is not bound to prove affirmatively that he was himself free from negligence, and this theory has been aecepted as the true one.”
As said, however, in that case, generally the proof showing the defendant’s negligence also shows the negligence or caution of the plaintiff, thus obviating the necessity in most cases of determining the question as to the burden of proof; and in the present case the whole question as to the negligence of *48 appellee arises upon the testimony relied on by the latter for a recovery against the company.
It is the duty of those attempting to cross the track of railroads to use every reasonable precaution in order to ascertain whether a train is approaching; but, as said by the court in the case of Spencer v. The Illinois Central Railroad Co. (29 Iowa, page 60), “he is only required to have satisfactory evidence that the road is clear, and this he might have by the absence of those warnings usuaily attending the starting or moving of a train through a town or city, just as effectually and efficiently as by looking up and down the track.”
In the case of The Philadelphia & Trenton Railroad Co. v. Hagan (47 Penn. 246) it was held that in the absence of the usual notice given of the approach of the train the deceased had the right to presume that the track was clear; and unless the jury were satisfied by affirmative proof that the deceased did not use ordinary care, the defendants were liable for the consequences of the injury. At these public crossings the customary signals for the approach of the train must be given; otherwise this lack of negligence on the part of the railroad company is but an inducement for those about to cross the track to believe that no vigilance is needed on their part.
It can not be regarded as a fixed rule that the failure to look for the approach of a train is negligence on the part of the party injured, as there may be proper diligence without the exercise of this precaution.
If the usual and customary signal was given by the one in charge of the train of its approach, the undisputed facts in this case fail to establish any negligence on the part of the company, unless the jury should believe that after the appellee was discovered on the track by those in charge of the train they could, by the exercise of reasonable diligence, have avoided injuring her.
No rule of negligence can well be laid down that will apply *49 to all cases. When an adult steps upon the track of the railroad, in full view of the approaching train, the employee in charge of the train has the right to presume that his own consciousness of danger will cause him to leave the track; but a child five or six years of age, lacking in capacity to know that it is in peril when in such a position, if run over by a train can not be said to have negligently contributed to the injury; and the want of ordinary care, or rather the failure to exercise all the diligence necessary under the circumstances, by the one in charge of the train to prevent the injury, would make the company responsible. If the train, without negligence on the part of those in charge of it, ran on the child before it could be seen, or when it was too late to save it by the exercise of ordinary care, which means such care as persons of ordinary care and caution would exercise under the circumstances, then the company is not liable.
“ It is ordinary care and caution with reference to the persons who exercise it; but it is the highest degree of care and caution with reference to the circumstances under which it is. to be exercised when human life is in peril.” (24 Ohio, Bellefontaine Railroad Co. v. Snyder.)
Such ordinary care and caution must be exercised by both parties. It can not be said that a sprightly child twelve years of age is incapable of exercising ordinary care for its own protection. Still the child is not required or expected to exercise that judgment in avoiding danger, or held to the same responsibility for its conduct in a ease like this, that would be measured out to an adult or one of more mature years.
We see no objection to instruction No. 4 asked by appellant on the question of contributory negligence: “The court instructs the jury that if they believe, from the evidence, the plaintiff, Mary Hoehl, by her own fault contributed to the injury complained of, and that she had sufficient intelligence and discretion at the time to understand the danger of crossing *50 a railroad, track when the cars were near and in motion, and that she would have escaped injury by exercising the caution and prudence that one of her age would ordinarily have used under the circumstances, then they should find for the defendant, unless the employees in charge of the train, after discovering her on the track, could, by the exercise of ordinary care, have stopped the train and avoided the injury.
Instruction No. 3 asked by appellant is to the effect that if the proper signals were given, and the plaintiff stepped on the traqk when the train was so near that it could not have been stopped by any reasonable exertion before the appellee was struck, they must find for the defendant. This should have been given.
It is unnecessary to review in detail the numerous instructions asked by counsel for the company and refused by the court below. The most of them give prominence to particular /acts as constituting negligence on the part of the appellee, and for this reason were properly refused.
It has been insisted that as this crossing was upon land belonging to the company, and the use by the public merely permissive, therefore the same degree of caution was not required of the company as is usual in running to public crossings. We can not see why this should change the rule.
“Where, for any good reason, a person has the right to cross, and may reasonably be expected to do so at the time which he selects for that purpose, the same rules apply as in the case of a highway crossing.” (Shearman & Redfield on Negligence, 540.)
For the reasons indicated the judgment is reversed, and cause remanded with directions to award the appellant a new trial, and for further proceedings consistent with this opinion.