## TEXAS & ST. LOUIS RAILWAY V. ORR, AD.

1. NEGLIGENCE: *Burden of proof of contributory.*
   If the plaintiff, in any case of personal injury, can show·negligence on the part of the defendant without at the same time disclosing the inherent weakness of his own case by reason of contributory negligence, then such contributory negligence is matter of defense, in confession and avoidance, and must be established by a preponderance of testimony by the defendant.

2. RAILROADS: *Must keep platforms and grounds in repair.*
   As a general rule railroad companies are bound to keep in a safe condition all portions of their platforms and approaches thereto to which the public do or would naturally resort, and all portions of their station grounds, reasonably near to the platform, where passengers or those who have purchased tickets to take passage on the cars, or those debarking from them would naturally or ordinarily be likely to go; and especially by those routes and methods which the company have established by its own customs and practice.

3. DAMAGES: *What Administrator may sue for.*
   *Quere:* May not the administrator sue for damages which the deceased might have recovered if he had lived, under sec. 5223, Mans. Dig., as well as the pecuniary damage to the next of kin under secs. 5225; 5226.

4. NEW TRIAL: *Newly discovered cumulative evidence.*
   As a general rule newly discovered cumulative evidence presents no ground for a new trial.

5. NEGLIGENCE: *Contributory. Conduct of party after the injury.*
   That an injured party does not adopt the best remedies, or follow implicitly the directions of his physician, will not excuse a wrongful injury which produces as its direct effect a disease from which death ensues. The law fixes no exact standard here, and it should be left to the jury as to the reasonableness of his conduct, and whether or not the death was caused by the injury.

APPEAL from *Miller* Circuit Court.
Hon. C. E. MITCHEL, Circuit Judge.

Texas & St. Louis Railway v. Orr, Ad.

L. A. Byrne, for appellant.

First—The allegations of the complaint show that deceased was not in the exercise of due care and caution, and was guilty of such gross negligence as to contribute to his injury, and preclude a recovery. There are no allegations that the point where the trestle was located was any part of a street or public highway, or was used by the public under a lease from the company, or that deceased had no knowledge of the structure. These are necessary allegations. 80 Ind., 168; 46 Md., 193. The gravamen of the complaint seems to be the want of a fence, and that in this appellant was guilty of negligence. There is no state law or city ordinance requiring railroads to fence their track. The complaint was bad on demurrer.

Second. Deceased had safe egress up one of three streets, and it was his duty to have selected one of these routes. 37 Penn., 420; 97 Mass., 275; 103 ib., 510. The relation of carrier and passenger had ceased. 22 Wis., 681; 2 Hun., 124.

Third—Deceased was guilty of negligence in traveling this route; it was no part of a public highway; he contributed to the injury, and there was no gross negligence on the part of the company. 36 Ark., 41; 82 N. Y., 424; 83 Ind., 319; Pierce on R. R's., pp. 323, 326; Redfield, ib., vol. 2, pp. 258, 263; 69 Ga., 370. In the eyes of the law deceased was a trespasser, and could claim no damages, unless the injury was wantonly inflicted. 41 N. Y., 525; 125 Mass., 75; 17 Hun., 74; 7 Hurl. & Norm., 736; 44 Penn. St., 373; 51 Md., 115. And that other persons were in the habit of using this track and trestle does not excuse deceased. 1 Hun., 417; 66 N. Y., 243.

Fourth—There is no law in this state requiring railroads to fence their track.

*Fifth*—The broken leg did not cause the death of deceased, He died from *gastritis*, from drinking alcoholic stimulants.

*Sixth*—The rule of law is, that it must be the *proximate* cause, not the *remote*, which produces the injury to support an action for damages. *4 Gray, 395; 21 Iowa, 15; Cooley on Torts, pp. 68, 80.*

*Seventh*—The seventh instruction announces a startling proposition. If this be law, an injured person is not held to any degree of care after an injury is inflicted. He may, by indirect acts, cause his own death, and hold others responsible. *36 Ark., 51.*

*Eighth.*—It was error to exclude the testimony of Dr. Allen, that deceased was intoxicated.

*Ninth*—If deceased was familiar with the streets of Texarkana, this was a material fact going to show contributory negligence. *75 Ind., 490.*

*Tenth*—The judgment should have been for appellant on the special findings.


*Scott & Jones* and *B. B. Battle*, for appellee.

The law requires railroad companies to use the greatest precaution to protect their passengers and the public. "As a general rule they are bound to keep in a safe condition all portions of their platforms and approaches thereto, to which the public do or would naturally resort, and all portions of their station grounds reasonably near to the platforms, where passengers or those who have purchased tickets with a view to take passage on their cars, would naturally or ordinarily be likely to go." This rule applies as well to those leaving the train as to those going to it. *McDonald v. Chicago & Northern R. R. Co., 26 Iowa, 124; Stewart v. International & G. N. R. R. Co., 53 Tex., 289; S. C. 2 Amer-*

*ican and English Railway Cases, 497; McKone v. Mich. Cent. R. R., 13 Am. & Eng. Ry. Cases, 29; Bueneman v. St. Paul, M. & M. Ry. Co., 18 Am. & Eng. R. R. Cases, 153 and n; Martin v. R. R. Co., 81 Eng. C. L., 186–7; Burgess v. R. R. Co., 95 Eng. C. L., 923; Longmore v. R. R. Co., 19 C. B. N. S., 183; S. C., 115; Eng. C. L., 183; Nicholson v. Lancashire & Yorkshire Ry. Co., 3 Hurlstone & Cottman, 534; Knight v. Portland, etc., R. R. Co., 56 Me., 234; Beard v. Com., etc., R. R. Co., 27 Vt., 377; Patten v. Chicago & N. W. Ry Co., 32 Wis., 524; Columbus & Ind. Ry. Co. v. Parnell, 31 Ind., 408; Gaynor v. Old Colony, etc., Ry. Co., 100 Mass., 211.*

"The owner or occupant of land who, by invitation, express or implied," allurement or inducement, "leads others to come upon his premises, for any lawful purpose, is liable in damages to such persons—they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public, or to those who were likely to act upon such invitation," allurement or inducement. "And if he is aware that persons are in the habit of passing over his grounds, trespassers though they may be, he is liable if he leaves in their way dangerous excavations or instruments by which they are injured." *Bennett, admx., v. L. & N. R. R. Co., 1 Am. & Eng. R. R. Cases, 71 and note; S. C. 102 U. S., 577, and cases in opinion and hereinbefore cited; Railroad v. Hanning, 15 Wal., 659; Wharton on Negligence, sec. 824 a, 349, 351, and authorities cited.*

If a fence between appellant's road and Front street in Texarkana was necessary to prevent accidents such as befell the deceased in this case, it was negligence in appellant not to have constructed it, although there was and is no statute requiring railroads to be fenced. Railroad companies are

not exempt from any obligation and liability imposed on cities and individuals in like cases. *Marcott v. M. H. & O. R. R. Co.*, *8 Am. & Eng. Ry. Cases*, *307*; *Beck v. Carter*, *68 N. Y.*, *283*; *Woods Mayne on Dam.*, *sec. 69*; *Chicago v. Hising*, *83 Ill.*, *204*; *Hastinge, admr., v. C. & N. Ry. Co.*, *49 Wis.*, *358*; *S. C. 1 Am. & Eng. Ry. Cases*, *65.*

Contributory negligence is never presumed. The burden of proving it in this case was on the appellant. *Shearman & Redfield on Neg.*, *sec. 44*; *Wharton Neg.*, *sec. 423*; *R. R. Co. v. Gladman*, *15 Wal. 401*; *Indianapolis R. R. Co. v. Holst*, *93 U. S.*, *291*; *Smoote v. Mayor, etc.*, *24 Ala.*, *112*; *Gay v. Winter*, *34 Cal.*, *153*; *Kentucky, etc., v. Hochl.*, *12 Bush, 41*; *R. R. Co. v. Maryland*, *31 Md.*, *357*; *Hocum v. Weitherick*, *22 Minn.*, *152*; *Thompson v. N. Mo. R. R.*, *51 Mo.*, *190*; *White v. Concord, etc.*, *30 N. H.*, *188*; *Durant v. Palmer*, *29 N. J.*, *544*; *Cleveland v. Crawford*, *24 Ohio St.*, *631*; *Penn. R. R. v. Weber*, *76 Penn. St.*, *157*; *Cassidy v. Angell*, *12 R. I.*, *447*; *Texas v. Murphy*, *46 Tex.*, *356*; *Knaresborough v. Mining Co.*, *3 Sawyer*, *446*; *1 Whar. Ev.*, *sec. 361*, and authorities cited.

Appellant insists that gastritis was the cause of the death of Galloway. Suppose it was the direct cause. Yet if he was injured by the negligence of appellant, and the injury rendered his system more susceptible to gastritis and less able to resist it, and death resulted from such disease, the death is legally attributable to such negligence. If the injury developed or superinduced and contributed to the production and development of the disease which was the immediate cause of the death, or accelerated his death, or was the cause of the cause which led to his death, his death is legally attributable to the negligence of appellant. *Beauchamp v. Saginaw Mining Co.*, *50 Mich.*, *163*; *S. C. 45 Am. R.*, *30*; *Bat. City R. R. Co. v. Kemp et ux.*, *61 Md.*, *74*; *S. C. 18 Am. & Eng. Ry. Cases*, *220*; *S. C. 61 Md.*, *619*; *T.*

*H. & I. R. Co. v. Buck, 96 Ind., 346; S. C. 49 Am. R., 168; Kitteringham v. Sioux City, etc., R. Co., 62 Iowa, 285; Heine v. McCaugham, 32 Miss., 17; Stewart v. Ripon, 38 Wis., 584; Brown v. C. M. & St. R. Ry. Co., 54 Wis., 342; S. C. 41 Am. R., 41; Nagle v. Mo. P. Ry. Co., 75 Mo., 653; S. C. 10 Am. & Eng. Ry. Cases, 702.*

Appellant insists that the court below erred in excluding the testimony of Allen as to the deceased being under the influence of whisky when he first saw him after the accident. It was proved that deceased was not under the influence of whisky at the time of the accident, and that soon after the accident, and before the physicians arrived, the whisky was administered. Dr. Allen arriving after this, could not tell whether, even if he could have observed the effects of alcohol, these effects were caused by whisky taken before or after the accident. The evidence excluded does not show or tend to show the extent of the influence of the whisky when Dr. Allen first saw him, or that it was sufficient to affect, materially or injuriously, the mind or action of the deceased.

The supplemental motion of appellant for a new trial, setting up newly discovered evidence to show that at one time the deceased had been appointed and qualified as a street commissioner of Texarkana, as a ground of new trial, was properly overruled. In this motion for new trial appellant alleges he used due diligence to discover this testimony, but does not show what diligence it used. It was properly overruled because it does not show what diligence was used.

S. W. WILLIAMS, Sp. J. About 3 o'clock in the morning of the 4th day of January, 1883, appellee's intestate, James Galloway, arrived at Texarkana, from some point in Texas, as a passenger on one of the appellant's regular

passenger trains, over its line of road. The weather was cool and damp, and the night was dark, and it had been raining. At the line in Texarkana, between the states of Arkansas and Texas, this train of appellant's stopped, as all its passenger trains were required to do, by a statute of Texas, thirty minutes. At this point, after a few moments delay, the engine, baggage and mail cars were uncoupled from the passenger cars, and were pulled at once up to the depot of appellant at the Marquand Hotel platform, a distance of 150 or 200 yards; at which place was the ticket office of appellant, and where baggage and mail were delivered by it, being used jointly with the Iron Mountain road. From this platform all its passenger trains started when leaving Texarkana. By direction of appellant's servants, as the testimony tended to prove, the deceased, James Galloway, and other passengers alighted at the state line, where those in charge of trains usually cried, " Change cars for all points north and east." One of the main streets of Texarkana, which city, at that time, contained about 5000 inhabitants, ran along, from the state line where appellant's train stopped, beside the track, for about half the distance between that point and the point where the accident complained of happened. At this half-way point the track diverges from the street at an angle of about forty-five degrees to the depot at Texarkana, at the Marquand Hotel, and all the intermediate space, from the point of divergence, was open and unprotected, as appears from the plat shown in evidence. Within about fifty yards of appellant's depot platform, in the track of appellant's railway, was an open and unprotected ditch and trestle. At the time Galloway got off the train there were lights ahead, on the line of railway, at the Marquand Hotel, and it does not appear that there were any on Front street, from which the track diverged. It was the usual route for

passengers, when they thus alighted, to go up to the depot of appellant along and over this road-bed and across this trestle of appellant. This usual route of traveling, and the custom of passengers to travel over it, were known to the servants of appellant, and by them permitted, and in one instance, at least, it was proved that passengers had been directed by the conductor to pass along the track. The streets of Texarkana about the 4th of January, 1883, were muddy and in bad condition. Galloway, in passing along this route, in the exercise of due care as expressly found by the jury, fell into this open trestle and ditch, or exposed pit, and broke his leg. The evidence tends to prove he received other injuries internally, from which gastritis was superinduced, and he died in three days thereafter. He was a stout, healthy man, about forty-five years of age, a working man, engaged in the saw-mill business, having just been the owner of a half interest in such mill. He lived at or near Texarkana. The direct route to his home was past and beyond the depot of appellant. When he left the cars, he started for his home by this route.

The court below gave eight instructions at the instance of appellee. Appellant objected to and complained of the first, the third, the fourth, the fifth, the sixth, the seventh and the eighth. The instructions excepted to are as follows:

*First*—The jury are instructed that the owner or occupant of lands who, by invitation, express or implied, induces or leads others to come upon his premises for any lawful purpose, is liable in damages to such persons, they using due care, for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to the occupant or owner, and not to the person injured, and was negligently suffered to exist without

timely notice to the public, or to those who were likely to act upon such invitation; and one who comes upon another's land by the owner's permission or invitation has a right to expect that the owner will not dig a pit thereon so that persons lawfully coming there may receive injury. If, therefore, the jury find that for a long time previous to the accident complained of, the defendant had permitted any and all persons who came over their road from Texas, after alighting from the cars in the town of Texarkana, to travel upon their track from the place of alighting to the defendant's depot in said town, and that numerous passengers had so traveled with the knowledge and without the disapproval of the agents and employes of said company; and in fact that it had become the main traveled way for such passengers and others, and that upon said track was an open culvert negligently constructed, or negligently, by the defendant's agents, permitted to remain open and uncovered and with their knowledge, and if you further find that the deceased, having come as a passenger over defendant's road to Texarkana, in accordance with said permission, attempted to travel to the depot of said defendant along said track, and if you further find that said deceased, in so traveling, used such care as a prudent man would have done under like circumstances, and notwithstanding such due care, fell into said culvert and received injuries whereof his death was either caused or hastened, then you may find for the plaintiff.

*Third*—If the jury find that the construction of a fence between said defendant's road and the highway on Front street, in Texarkana, would have prevented this alleged accident, then was it negligence in said defendant not to have constructed said fence; and if the jury find that this alleged accident was caused by the negligence of defendant, unmixed with negligence of the deceased, and that this

accident caused his death, then you may find for the plain-tiff.

*Fourth*—The jury are instructed that it is not necessary for the plaintiff to prove that the alleged accident was the sole or direct main cause of the death, but if he prove from any facts or circumstances in evidence to the satisfaction of the jury that his death was superinduced by, or the result of said accident, and that it was the result of the negligence of the defendant as aforesaid, and unmixed with ordinary negligence on the part of the deceased at the time of the accident, they may find for the plaintiff.

*Fifth*—If the jury believe, from the evidence, that, as alleged in plaintiff's complaint, the deceased purchased a ticket, or paid his fare over defendant's road from Pittsburg, or other point in Texas, to Texarkana, then was it a contract between defendant and deceased for carriage from defendant's main passenger depot at Pittsburg, or such other point, to their main passenger depot in Texarkana; and if, before arrival at said main passenger depot in Texarkana, the deceased was compelled by the direction of defendant's agent to change cars, or by their neglect to run the same up to said main passenger depot, to alight from said cars before their arrival, then was it the duty of defendant to furnish a safe, easy and convenient walk upon which to travel to said depot building, and if they did not so furnish said safe walk or approach to said depot building, then was it negligence on the part of said defendant; and if the jury find that from said negligence the deceased, using due care, received the alleged injury which led to or caused the death of the deceased, you will find for the plaintiff.

*Sixth*—The jury are instructed that, if they find for the plaintiff, the measure of damages will be such pecuniary loss as can fairly be by them estimated from the facts proven, in connection with the knowledge and experience

possessed by all persons in relation to matters of common observation.

*Seventh*—The jury are instructed that if they find from the evidence that the deceased received the injuries, to-wit: a broken thigh and severe shocks to the system from the negligence of the defendant, as alleged in plaintiff's complaint, and that either said broken thigh, or some shocks, caused gastritis in the deceased to be produced or accelerated, and that therefrom the deceased came to his death, then the jury will find for the plaintiff, even though they may find that the deceased did not receive the best medical attention, or receiving same, neglected or refused to follow it.

*Eighth*—The determination whether or not the defendant was guilty of negligence in constructing and maintaining the open culvert complained of, the jury may take in consideration the place where said culvert was located, the purposes for which defendant's track was used at the place where said culvert was located, and the further fact, if so proved, of the absence of lights or other signals at or near said culvert, to warn those lawfully using said track of any danger, if danger existed under the proof; the light some distance ahead in the depot of the defendant, and all other facts and circumstances in evidence; and if, from these, you find that defendant negligently constructed or maintained such open culvert, and that deceased, while exercising ordinary care and prudence, and while in lawful use of said track, fell into said culvert and received the injury complained of, which injuries caused or superinduced his death, then you will find for the plaintiff.

The defendant below asked written instructions. The court gave all but the third, sixteenth and eighteenth.

3. When a person receives any injury by falling through an open trestle of a railway company, from which he dies,

and neither the railway company nor its agents was the immediate cause of the fall, then the law presumes that his own negligence was the cause of his death, and beiore there can be a recovery in the action it devolves upon the plaintiff to show that said deceased was free from fault; so in this case it must appear by a preponderance of evidence that the deceased was free from fault.

This instruction was properly refused, because: *First*—In view of the facts, it tended to mislead the jury from the real issue, which was as to negligence in allowing a nuisance to exist upon its grounds, where the company had invited the public to pass for its business and profit, to a consideration of the mere incidental question whether those agents themselves, instead of the nuisance, were the proximate cause. The act of negligence was complete when the nuisance was suffered to remain, and the connection of the agents with it in the further fact, that they induced, permitted and encouraged the public to pass over it, without taking necessary precaution to protect them from injury. *Second*—This instruction shifted the burden of proving contributory negligence on the plaintiff, which, in this case, rested peculiarly upon defendant. If the plaintiff, in any case of personal injury, can show negligence upon the part of defendant, without, at the same time, disclosing the inherent weakness of his own case by reason of contributory negligence, then such contributory negligence is a matter of defense—in confession and avoidance—affirmative in its character, and the burden is upon the defendant to establish the defense by a preponderance of testimony, as in all other affirmative defenses of like nature. It is true that in Massachusetts, and perhaps some other states, the rule has been carried to the extent claimed in this instruction, but this position is not sustained by principle or the weight of authority, and the Supreme Court of the

13–46

1. CONTRIBUTORY NEGLIGENCE: Burden of proof.

United States has put the question at rest in the case of
*Indianapolis Railroad v. Horst,* 93 U. S., 291. This ques-
tion is discussed by *Shearman & Redfield,* in *sec. 44,* of their
work on *Negligence.* They say parties were never required
to prove negative matters of this kind, and also that it
had never been held necessary in a complaint, upon negli-
gence, to aver that plaintiff had taken due care, and they
criticise a different ruling in Massachusetts. See, also, *R.
R. v. Gladman, 15 Wall., 401; Smoote v. Mayor, 24 Ala.,
112; Gay v. Winter, 34 Cal., 153; 12 Bush (Ky.), 41; 31
Md., 357; 22 Minn., 152; 51 Mo., 190; 30 N. H., 188; Du-
rant v. Palmer, 29 N. J., 544; 24 Oh. St., 631; 76 Penn. St.,
157; 12 R. I., 447; 46 Tex., 356; 3 Sawy., 446; 1 Whart.
Ev., 361; George v. R. R., 34 Ark., 613.*

The sixteenth instruction of defendant is as follows:

16. If the jury believe from the evidence that the fall of
the deceased at the trestle was the remote cause of his death,
then they will find for the defendant.

This instruction was obscure and misleading, when ap-
plied to the facts of the case, and was objectionable on the
same ground as the first clause of the third instruction.

The eighteenth instruction of the defendant was:

18.   If the jury find from the evidence that, at the time
the deceased met with the accident, he was under the influ-
ence of whisky, this is a fact that would go to establish
contributory negligence.

This was properly refused: *First*—It was abstract, for
the only witness who was with Galloway when the acci-
dent happened, states that he was not then intoxicated,
and proves that the accident was caused entirely by the
condition of the nuisance and the darkness of the night.
*Second*—Intoxication would not here be evidence of con-
tributory negligence, unless the proof showed that it tended
to produce the result. Indeed, it might be doubted whether

the fact that the blind, the lame, the sick and feeble, the aged and the child, as well as the occasionally festive, were likely to pass over this route according to the custom of the company, as proved clearly, would not have imposed a higher duty of diligence on the company to have taken some method, by fencing, by lighting, by covering up, or by timely warning, to have protected the helpless; and it would be going quite too far to hold, under the facts of this case, that, after the company had maintained this nuisance there, and invited its customers to pass over it, that the being blind, lame, feeble, sick or drunk, and the undertaking, in that unfit condition, the hazardous enterprise of traversing their customary foot route to the depot, in ignorance of its dangers, was of itself contributory negligence. The company owed a high duty here to all, who, as its licensees, passed over this route. As a general rule, railroad companies are bound to keep in a safe condition all portions of their platforms and approaches thereto, to which the public do, or would naturally resort, and all portions of their station grounds reasonably near to the platform, where passengers, or those who have purchased tickets with a view to take passage on the cars, or to debark from them, would naturally or ordinarily be likely to go; and especially by those routes and methods which the company have established by its own customs and practice, as here. This is well established. *McDonald v. Chicago and Northern R. R. Co.*, *26 Iowa, 124;* *Stewart v. Int. & G. N. R. R.*, *53 Tex., 289;* *2 Am. & Eng. R. Cases, 497;* *McKone v. Mich. Cent. R. R.*, *13 Am. & Eng. R. Cas., 29;* *Buneman v. St. P. & Ry.*, *18 Am. R. R. Cases, 153 and note;* *Martin v. R. R.*, *81 Eng. C. L.*, *186–7;* *Burgess v. R. R.*, *95 Eng. C. L., 923;* *Longmore v. R. R.*, *19 C. B. N. S., 183;* *S. C. cited in 115 Eng. C. L., 183;* *Nicholson v. Lancashire, etc., R. Co.*, *3 Hurl. & Cott., 534;* *Knight v. Portland, etc., R. R.*,

2. Railroads must keep platforms and approaches in repair.

*56 Me., 234; Beard v. Con., etc., R. R., 27 Vt., 377; Patten v. Chicago and N. W. Ry., 32 Wis., 524; Columbus and Ind. Ry. v. Farrel, 31 Ind., 408; Gaynor v. Old Colony, etc., Ry, 100 Mass., 211*

Some of these cases are much like this in some features. In McKone's case, above cited, McKone was not a passenger, but had, at night, gone to the depot to meet his wife, who was coming in on a night train; having occasion to step aside, the regular urinal having been destroyed by fire, to get out of sight of passengers alighting from the train, he stepped four to eight feet beyond the sidewalk, on to a part of the railroad company's premises that were used by the company and its patrons as a part of the station grounds, and fell down into a deep hole and was seriously injured. Held, that the plaintiff was entitled to recover, and was not a trespasser.

Before leaving the defendant's instructions, we will say here that the court below gave, at the instance of defendant, liberal and fair instructions upon every point involved, and the whole case was fairly presented to the jury, and as favorable to the defendant as the evidence warranted; and the fifth and fourteenth instructions for defendant were more liberal than the law warranted. They were to the effect that if, by law, the train was stopped at the state line, and Galloway voluntarily debarked there, without any inducement being offered to him to do so, and that he had gone 100 yards before the accident happened, then the relation of carrier and passenger had ceased, and the company was not liable for any injury by deceased in the capacity of carrier. This presented a totally immaterial issue. Under the facts of the case, the real issue here was: Did the company negligently permit a nuisance to exist, at or near their platform? Was Galloway lawfully there? Did the injury

occur in consequence of it without fault on Galloway's part? These were the true issues, and the instructions were misleading, under the facts of the case, especially the fourteenth, which went the length of directing that defendant was not liable in that contingency. There were some other instructions given for defendant that limited the issue unduly favorable to it.

The seventeenth instruction: "If the jury believe from the evidence, that deceased died from a disease known as gastritis, or inflammation of the stomach, and not from the effects of the fractured thigh or other injury, then they will find for defendant." 3. What damages administrator may sue for.

This instruction was given, and the instruction number six given for plaintiff, all indicate that on both sides the theory seemed to be, at the trial below, that if there was no death there could be no damage. The above instruction need not be discussed here, as no point is made upon it. But the question would arise here on the instructions, special findings and motion for judgment on them, whether an administrator may not sue for damages which the deceased might have recovered, had he lived, under *sec. 5223, Mansfield's Digest*, as well as the pecuniary damage to the next of kin under *secs. 5225, 5226, Mansf. Dig*, the act of March 6, 1883.

These two statutes must sooner or later be construed, and the question must be determined, how far, if at all, the later trenches upon the former act, or whether the one is cumulative of the other. As counsel have not raised the question, or given us the benefit of their assistance in its solution, we deem it safer to pass it for the present. *Ward v. Blackwood, 41 Ark., 300;* and *Townsend v. L. R. & F. S. Ry., 41 Ark., 382,* present the two phases of the question, and in the latter case, as it arose before the passage of the act of 1883, though this question was raised

and discussed by counsel, this court decided that the case was controlled by the act of 1875,—still another and different act—providing for suits by administrators, in case of death caused by negligence of a *railroad* company.

The court amended and added to the fifth, sixth, ninth and fourteenth instructions. As to the fifth, sixth and fourteenth the instructions as asked were, as to voluntarily leaving the train by deceased, an immaterial issue, and might well have been refused. The court qualified them, as asked, to the effect that if deceased left the train at the state line, under inducements produced by the conduct of defendant's agents, the relation of carrier did not cease then. The ninth instruction asked that the jury should be instructed that by the laws of this state, the defendant was not required to fence any part of "*their*" road-bed, and a failure to do so is not negligence. To this the court added "*ordinarily,*" which was proper under the facts of this case; for the instruction, as asked, might have mislead the jury to believe that the defendant could leave an open culvert on its track, in a few feet of a public highway, on or near its depot grounds, and invite and allow its passengers to use its track as a foot-path. And if not its duty to fence, it was not to light it at night, nor to give any warning to those who might travel over it. This qualification was proper. If fencing, at the place, was the only reasonably sure mode of preventing their passengers from passing over it, then it was as much their duty to fence it, as to take any other reasonable precaution to prevent injury to its patrons. While it was not, ordinarily, negligence not to fence the road-bed, it was a question to be left to the jury, here, whether this, or some other precaution, should not have been used to prevent injury to its passengers.

There was a general verdict for plaintiff for $2,500 damages, and certain special findings. The defendant moved to set aside the general verdict and render judgment upon the special findings.

First, Because they showed that Galloway died from gastritis, and not from injury; and second, That Galloway contributed to his own injury in the selection of the route he was traveling, when he received the injury.

The jury found specially: 1. That the train stopped at the state line in obedience to the laws of Texas. 2. That the deceased did not leave the train there of his own accord, without inducement or solicitation of defendant's servants, while they were stopped at the state line. 3. That had he remained on the train until the thirty minutes were out, deceased would have been delivered at the platform of the Iron Mountain depot by the defendant's employees. 4. That deceased would have avoided the danger if he had remained on the cars until he was delivered at the Iron Mountain depot at the Marquand Hotel. 5. That the route he took was not the safest, but the usual route for the passengers. 6. That Galloway was not under the influence of whisky at the time he met with the accident. 7. That deceased acted with due prudence and caution in attempting to pass up the track of defendant, and in attempting to cross the trestle through which he fell. 8. That deceased, at the time of the accident, was not sufficiently familiar with the streets of Texarkana, so that he might know the safest route to travel after leaving defendant's cars. 9. That deceased died from gastritis, caused by the accident.

The evidence in the case supported these special findings, and in every material particular they support the general eral verdict, and this motion was properly overruled. The defendant then moved for a new trial, setting out

nine grounds, which was overruled. The first and second grounds are the usual ones—verdict contrary to evidence—contrary to law. The third ground was for giving the first, third, fourth, fifth, sixth, seventh and eighth instructions of plaintiff. Fourth, in refusing to give the third instruction for defendant, which the court refused, and the remaining grounds to the ninth were for refusing to give the instructions, as asked, and amending them.

The ninth ground was that the court had refused to permit defendant to prove by Dr. Allen, that, when he came to the deceased, a short time after the accident, he found him in a state of intoxication. This point can be disposed of in a few words. Dr. Allen came to see the deceased after he was hurt, the same night, having been sent for. He did not see him at the time he was hurt, nor immediately after; and had not seen him immediately before, and could not until after he had been carried to the Marquand Hotel, and had called for and drunk whisky; and the witness, who was with him when the accident happened, and saw it, and helped him to the Marquand House, where he called for spirits and drank, before the doctor came, says he was not intoxicated at the time of the accident. And Charles Wilson, the hostler of defendant, and George McDonald, the yard-master, helped the deceased out of the trestle. The former says nothing of his drinking. The latter said, from the smell of his breath and his actions, he thought he was drinking at the time. These witnesses of defendant had helped to carry deceased from the trestle to the Marquand Hotel. So that this testimony could not have cast any additional light upon his condition when the accident occurred. Besides, the use of spirits at the Marquand House, that night, and his condition there, is amply proved by other testimony, and was even drawn out of

Texas & St. Louis Railway v. Orr, Ad.

Dr. Allen on cross-examination, so that if it was an error to exclude it, it was harmless; for the facts—as it was stated Dr. Allen would prove them, after the fact—got before the jury in a prolix form, even, in the investigation of deceased's stomach, for which purpose his after drinking, from the time he reached the Marquand Hotel, was proved.

The defendant filed a supplemental motion for a new trial, on the ground of newly discovered testimony; that on the 23d of August, 1881, Galloway was, by the city council of Texarkana, elected street commissioner, which position he held until the 11th of April, 1882, and as such had the supervison of the streets. There was attached to this motion the affidavit of the recorder of the city to the fact of his office holding. The attorney swears to this motion, and that he used *due diligence* to prepare the defense, and did not know this fact. He does not show what diligence he used. Here, in the town where this attorney resides, where this matter was of record, where, if Galloway acted as such officer, so as actually to have given him the necessary knowledge, which was the material inquiry here, the fact must have been generally known in this city, where the defendant had an office, where it was served with process, and, if the knowledge derived of the streets of Texarkana, two years before the accident, would have had any weight in law or fact in this case, there is a total want of diligence. Besides, this testimony is cumulative. The defendant had examined witnesses as to Galloway's knowledge of this open trestle over a ditch twelve or fifteen feet wide and five or six deep, and had submitted a special proposition upon it to the jury. It is true that it had failed to show such knowledge to the satisfaction of the jury; but it was a necessary question on the trial, and as a general rule newly discovered cumulative evidence presents no ground for a new trial. It was proved

4. NEW TRIAL: Newly discovered cumulative evidence no ground for.

that it was the first time Galloway had been out on this road; that he lived on the opposite side of the city; that the route he took was the nearest way to his home; that he had lived in the town nearly all the time for two years prior to the accident. There was no affidavit, or offer, to prove that Galloway ever performed the duties of the office actively, or that those duties would have led him off the streets on to defendant's track, which they proved was not a part of the highway, though near it. The court properly overruled this motion for a new trial.

The plaintiff's instructions—the third ground for new trial—alone remains to be considered. The first instruction was properly given, as shown by the authorities presented above, in connection with the defendant's instructions. We will add to them here: *Bennett, admr., v. L. and N. R. R., 1 Am. and Eng. R. R. Cases, 71, S. C., reported in 102 U. S., 577.* In 1876 the deceased was a passenger on the cars of the Louisville and Nashville Railroad Company from Vernon to Danville, in Tennessee. At Danville he left the train for the purpose of taking passage on a boat belonging to the Evansville and Tennessee River Packet Company, engaged in the navigation of that river. Its customary place of landing for Danville and immediate vicinity, on that side of the river, was a wharfboat, moored at or against a lot within a few hundred yards of the railroad station. Between the railroad company and the packet company there was, at the time, an arrangement, or contract, by the terms of which each party enjoyed a community of interest—in what proportion was not stated—in the freight and passenger traffic at that point. They were mutually at liberty to sell through tickets, and give through bills of lading, over their respective lines. Both the wharf and lot were owned by and were under the exclusive control of the railroad company. The wharf

Texas & St. Louis Railway v. Orr, Ad.

was used by the company and the public for storing freight, and for convenient place for landing steamboats navigating the river. The company had a shed on this wharf, where goods were drawn up the bank by an engine, by means of ropes attached to flat-cars run on a rail track. These cars were pulled up the bank into spaces left in the floor of the depot. These hatch-holes reached from the river side of the depot nearly to its center, and were about eleven feet in width. The customary and, indeed, the only safe, available and convenient route, for persons passing from Danville to the steamboat landing, was along a plank-way, on each side of which the ground was low and marshy, put down by the railroad, terminating at or near the northern end of the depot, thence up a flight of steps to this depot and across it towards the southern end; thence down a flight of steps, located between two of these hatch-holes, to the wharfboat,·over a macadamized way, made by the railroad company for the convenience of its passengers and business, for those going upon business to or from the steamboat landing. The custom of travelers passing the railroad station at Danville and the steamboat landing, to use as a foot-way the plank road, the depot floor, and this macadamized way leading to the wharfboat, was not only a necessary one, but was known to and permitted by the company. The deceased reached Danville by the cars of the company, and stopped at a hotel to await the coming of the boat. That night, some time after midnight, the steamboat reached the vicinity of the landing, and by whistle signaled for landing at the wharfboat. Deceased started from the hotel for the boat, for the purpose of prosecuting his journey, taking with him a lighted lantern. The depot had no light. The deceased did not know of the hatch-holes, and fell into one of them, breaking limbs and receiving some injuries, which confined

him for a long time.  The suit was revived in the name of
Bennett, his administrator.  The Supreme Court of the
United States, by Harlan, J., says: "The facts disclosed
by the pleadings, and by the demurrer conceded to exist,
.seem to bring this case within the rule founded in justice
and necessity, and illustrated in many adjudged cases, in
the American courts, 'that the owner or occupant of land'
who, by invitation, express or implied, induces or leads
others to come upon his premises, for *any lawful purpose,*
is liable in damages to such persons, they using due care,
for injuries occasioned by the unsafe condition of the
land or its approaches, if such condition was known to
them and not to him, and was negligently suffered to exist
without timely notice to the public, or those who were
likely to act upon such invitation.'" Citing *R. R. Co. v.
Hanning, 15 Wallace, 649; 99 Mass., 216; 10 Allen, 368;
Wharton on Negligence, secs. 349, 352; Cooley on Torts,
604-607*, and several English cases.

The third instruction of plaintiff is correct.  Under the
facts of this case it was the duty of the defendant, under
the rule announced in *Bennett v. The Railroad, ubi sup.*,
either to remedy the "unsafe condition of the land" over
which it induced the public to pass, or to take some other
steps to warn or notify those passing of the danger, if it
was not covered or lighted at night, nor warning given,
nor fenced so as to warn and prevent.  Any one of these
methods of prevention might have been submitted to the
jury hypothetically, as was correctly done in the eighth in-
struction of plaintiff.  If to place a red lantern light at
the ditch would have prevented, then was it negligence not
to do that.  Of course it was negligence not to do anything
to guard against the accident.  Now, if the defendant had
covered the ditch, or put a light there, or taken any other
similar precaution to avoid accident, and fencing had

been proposed as an alternative and better precaution, then the question which appellant's counsel argues here with ability and force would have arisen. But where no precautionary method was adopted by appellant to prevent accident, any one or all of the preventive methods might have been presented hypothetically to the jury, as was done in the third instruction as to fencing, and in the eighth as to other preventive methods. There are authorities for the method by fencing, but it is not material to the real question. In *Marcott v. M. H. & O. R. R. Co.*, *8 Am. & Eng. R. R. Cases*, *307*, an instruction like this was approved by the Supreme Court of Michigan, where there was no statute requiring railroads to fence their track. See for this point *page 309*. In *Beck v. Carter*, *68 N. Y.*, *284*, a land owner, who had lands on an alley adjoining a hotel, had, for a long time, allowed his grounds as a public pass-way. On commencing to build, he had left a cellar which was dug, preparatory to building, uncovered and unfenced, and one passing over it, at night, was hurt. The court of appeals held that the owner was liable for the damages resulting from the injury, though the alley had never been accepted as a highway, but was simply used by the public, and had been so used, in connection with the adjoining open ground, by the public as a pass-way, to and from the United States Hotel, which had been burned down at the time of the accident.

The fifth instruction presented an immaterial question in this case, and was harmless, even if wrong. The authorities above cited upon other points, and especially the Bennett case in *102 U. S.*, shows that it was perfectly immaterial here whether the relation of carrier and passenger existed between deceased and defendant at the time of the accident; the sole question being the lawfulness of Galloway's presence at the time and place of the accident. The

fifth instruction, as well as the modification of the defendant's instruction upon this point, were not erroneous.

The fourth, sixth and seventh of plaintiff may be considered together, as they pertain to kindred subjects. The sixth gave a correct rule of damage as far as it went, and taken in connection with the seventeenth given for defense, and the special propositions submitted to the jury as to the death and its cause, the jury could not have understood the instruction to refer to anything but damages resulting from the death, which was perhaps more narrow than the law warranted, so that the only particular in which the instruction is vague is cured by the seventeenth instruction of defendant, and is an error, if it be one, to appellant's advantage, in narrowing the measure of damages.

5. CONTRIB-UTORY NEGLI-GENCE: Conduct of party after the injury. The fourth instruction was properly given, and the seventh had better been omitted. The last clause of it is somewhat ambiguous, and might, taken alone, tend to mislead, in view of the testimony. But when taken in connection with the second, twelfth and seventeenth instructions of defendant, as to contributory negligence and as to the cause of death, that clause of the seventh instruction could not reasonably have been construed by the jury to mean that Galloway might have superinduced gastritis or produced his own death by neglect, after the accident, and his administrator have the right to recover for it. That the injured party does not follow the best remedies, or that he may not implicitly follow what his physician may direct, would not excuse a wrongful injury, which produced, as its direct effects, a disease from which death ensues. One man, knowing his own constitutional idiosyncrasies, might prefer to avoid medicine, another to take it. The law lays down no exact standard of duty here. It should be left to the jury as to the reasonableness of conduct, and whether

or not death was caused by the injury, and it was fairly done in this case.

Finding no error, judgment affirmed.

Hon. B. B. BATTLE did not sit in this case.