LOUISIANA & ARKANSAS RAILWAY COMPANY *v.* ANDERSON.

Opinion delivered June 30, 1919.

1. RAILROADS—NEGLIGENCE—APPROACHES TO STATION PLATFORM.—It is the duty of a railroad company to keep in safe condition an approach to its station platform, to which the public would naturally resort.

2.  SAME—NEGLIGENCE—QUESTION FOR JURY.—The approach to a depot platform which has a fall of 3 feet in a distance of 10 or 15 feet, and which is crossed by a gulley 8 inches deep by 24 inches wide hidden by grass, is not as matter of law so dangerous that an ordinarily prudent man would not attempt to drive over it.

3.  SAME—NEGLIGENCE—INSTRUCTIONS.—Instructions as to a railroad's duty to keep its station approaches in reasonably safe condition, and as to plaintiff's contributory negligence in driving down a steep slope having patent obstructions, *held* not objectionable for authorizing recovery, though plaintiff drove over an unsafe place when a safe place had been prepared for him.

4.  TRIAL—PERSONAL INJURY—INSTRUCTION.—In an action against a railroad company for injuries received by plaintiff driving down an approach to defendant's depot platform, objection that instruction assumed that such slope was one of the approaches of the platform was *held* not well taken, where the instructions as a whole clearly left the question to the jury.

5.  TRIAL—INSTRUCTIONS IGNORING ISSUE.—An instruction that one using a driveway at a station is only required to notice such defects as are patent, and that he can not recover if injured on account of defects of which he knew or ought to have known by the exercise of ordinary care, *held* not objectionable as excluding the idea that it was his duty to take note of patent defects.

Appeal from Hempstead Circuit Court; *Geo. R. Haynie*, Judge; affirmed.

*Moore, Burford & Moore*, for appellant.

1.  It was error to refuse to sustain the demurrer to the complaint and in refusing to give instruction "A" for defendant for a directed verdict. The uncontradicted testimony shows that defendant had erected a safe approach to and from its baggage room running north and south along the west side of the depot at Hope, and it was not appellant's duty to keep the west slope in repair, because it was not built or intended for use as an approach to the platform or as a means of debarkation therefrom. The accident happened on May 2nd, more than two months prior to the date of the examination by plaintiff's witnesses. Common knowledge of the season in Arkansas shows that the weeds and grass could not have hidden the rut on the date of the accident, and besides it did not happen or occur on the driveway

intended for the use of the public as a driveway. Plaintiff was guilty of contributory negligence, and could not recover. Any defect was patent, and readily discoverable, and anyone who used it assumed the risk. 85 Ark. 463; 92 *Id.* 208; 94 *Id.* 252; 205 S. W. 886.

2. The court erred in giving request No. 1 for plaintiff; also in giving instructions Nos. 3 and 4. 94 Ark. 252. They invaded the province of the jury and there was no evidence upon which to base them and assume certain facts to be true, nor do these instructions correctly state the law. *Ib.*

*McMillan & McMillan* and *Searcy & Parks,* for appellee.

1. The danger was not patent and open, but the evidence shows that the ditch was hidden by grass and weeds which defendant had carelessly permitted to grow. No witness stated that the west side of the dump was not intended for public use.

2. The instructions, as a whole, correctly state the law. 83 Ark. 318. The verdict is small under the circumstances and proof.

HUMPHREYS, J. Appellee instituted a suit against appellant in the Hempstead Circuit Court to recover damages in the sum of $15,000 for an injury received on May 2, 1917, in falling from a wagon being driven down the west slope of the gravel platform to appellant's depot in Hope. It was alleged that the west slope was rendered unsafe for wagons being driven down the slope from appellant's baggage room, through appellant's negligence in permitting the ground to be cut with washes and hidden from view by growing grass and weeds.

Appellant denied the allegation of negligence, and pleaded contributory negligence on the part of appellee in driving down the west slope, instead of following the roadway down the north slope, prepared by it for the use of persons going to and from the depot.

The cause was submitted to a jury upon the pleadings, evidence and instructions of the court, upon which a verdict was returned and judgment rendered against appellant for $1,000. From the verdict and judgment, an appeal has been duly prosecuted to this court.

Appellee moved from Louisiana to Springhill, Arkansas. His household goods were shipped and trunks checked to Hope, Arkansas. In company with his brother, J. F. Anderson, he went from Springhill to Hope for his goods and trunks, which came over appellant's railway and were deposited in appellant's freight depot and baggage room. Appellant had constructed a gravel platform, or dump, about three feet high, extending north and south along the passenger depot and baggage room. The north and south slopes from the platform to the street were from twenty to thirty feet long, and the west slope about half that length, extending from the top of the platform to a level with the street below. The north and south slopes were generally used in approaching and departing from the depot. The general travel was on a well defined or beaten roadway over the dump or platform from either the north or south. There was some travel, however, up and down the west slope by persons going in wagons to and from the depot. Sin Mauldin, who ran a service car and met all passenger trains, saw people frequently turn down the west slope, and was in the habit of driving his own car down it "every day or two." There was evidence tending to show that a gulley about two feet wide and eight inches deep had been cut by water in the west slope, opposite the baggage room; that it was hidden from view by grass and weeds that had grown in it and on a part of the slope. After loading a stove and box of goods at the freight depot, south of the passenger depot, appellee and his brother drove up the south approach on the gravel platform and stopped opposite the baggage room door. The back end of the wagon was near the door and the team and wagon turned in a northwesterly direction. They then loaded the trunks, putting one near the front

to sit upon. The most direct route toward their home was to go in the direction in which the team stood, down the west slope and, it appearing to the driver, as well as appellee, that it was all right to drive down that slope, they did so, turning toward the left. They testified that the right wheel dropped into a ditch or gulley, causing the left wheel to cut into the wagon bed and tilt it so as to throw appellee from the wagon and on to the ground and break his kneecap and otherwise injure him; that they did not see the ditch, or gulley, into which the right wheel fell, because it was obscured by grass and weeds growing in and near it. Appellee had observed and knew that the most usual way to drive off the platform to the street was either by the north or south route.

Appellant insists, first, that no duty rested upon it to keep the west slope in repair, because it was not built, or intended, for use as an approach to the platform, or a means of debarkation therefrom; and, second, that the precipitous grade, as well as the ditch, were patent and the drive over it so obviously dangerous that appellee was guilty of contributory negligence in attempting to drive down said slope, especially in view of the fact that a better way had been prepared, either to the north or south. In other words, appellant contends that, under the law as applied to the undisputed facts, the court erred in refusing to instruct a verdict for it.

(1) It can not be said, as a matter of law, that no duty rested upon appellant to keep the slope in reasonably good repair, for the evidence shows that it was in close proximity to the depot, a part of the construction of the platform, and frequently used as an approach to it. This court has announced and reiterated the general rule that, "Railroad companies are bound to keep in a safe condition all portion of their platforms and approaches thereto to which the public do or would naturally resort, and all portions of their station grounds, reasonably near to the platform where passengers or those who have purchased tickets with a view of taking passage on the cars, or to debark from them, would naturally or ordi-

narily be likely to go." *Texas & St. Louis Ry.* v. *Orr,* 46
Ark. 182; *St. L., I. M. & S. Ry. Co.* v. *Barnett,* 65 Ark.
255; *St. L., I. M. & S. R. Co.* v. *Dooley,* 77 Ark. 561; *St.
L. & S. F. Rd. Co.* v. *Caldwell,* 93 Ark. 286; *Arkansas
Midland Ry. Co.* v. *Robinson,* 96 Ark. 32; *St. L. & S. F.
R. Co.* v. *Grider,* 110 Ark. 436.

(2) The grade of the west slope to the platform
was not so precipitous that it can be said, as a matter of
law, that it was obviously dangerous to drive upon it.
There was a fall of three feet in a distance of ten or fif-
teen feet. Parties frequently turned down it, and some of
them testified that it looked all right for that purpose.
Neither can it be said as a matter of law that the gulley
eight inches deep by about two feet wide, running diag-
onally across a part of the slope, in and about which
grass was growing, was such a patent defect, or so ob-
viously dangerous, that an ordinarily prudent man would
or should not attempt to cross it. Some of the witnesses
testified that the gulley was hidden by the grass growing
in and near it, and that the slope appeared to be smooth.

The undisputed facts did not warrant a verdict for
appellant, so appellant's request for an instructed ver-
dict was not well grounded.

Under our construction of the instructions, when
read together, the case was submitted to the jury on the
theory that it was the duty of appellant to exercise ordi-
nary care to keep the approaches to its depot platforms
in reasonably safe condition for use by its patrons, and
that, before appellee could recover, it must appear from
a preponderance of the evidence that he was injured by
reason of a hidden gulley in an approach to the plat-
form, of which appellant, or its agents, knew, or could
have known in the exercise of ordinary care, and of
which appellee did not know and could not have known
in the exercise of ordinary care. The jury were plainly
told that, "if appellee drove down a steep incline that
had obstructions that were patent and readily seen, he
is deemed to have assumed the risk," and, having thus
negligently contributed to the injury, could not recover.

In the light of this specific direction, it can not be said, as contended by appellant, that the first instruction given by the court authorized a recovery whether or no appellee selected and drove over an unsafe place when a safe way had been prepared for him.

Appellant's next insistence, that instruction No. 3, given by the court, assumes that the west slope was one of the approaches to the platform, is not well taken. The language complained of, in the context used, and, when considered in connection with the other instructions given by the court, told the jury, in effect, that, in order to fix liability on appellant, it was necessary for them to first find that the slope was so constructed that reasonably prudent persons going to and from the baggage room would regard and use it as a safe place to drive. We think the issue as to whether the west slope was an approach to the platform was left to the jury, and not assumed by the court.

Specific objection was made to instruction No. 4, given by the court, for the reason, it is said, that it excluded the idea that it was appellee's duty to take note of all patent or obvious defects on the driveway. The following sentence appears in the middle of said instruction: "The plaintiff (appellee) is only required to take notice of such defects or hazards in the driveway as are patent and obvious to the senses." Again, in the latter part of the instruction, the jury were told that appellee could not recover if injured on account of defects of which he knew, or ought to have known, in the exercise of ordinary care. It appears to us that the rule, which it is contended is excluded by the instruction, is clearly announced in it.

While there are some inaccuracies in the instructions, upon the whole they embody the law applicable to the facts in the case.

No prejudicial error appearing in the case, the judgment is affirmed.